Argued June 5, reversed and remanded August 23, petition for
rehearing denied October 1, 1968

## STATE EX REL NILSEN, *Respondent, v.* LEE ET UX, *Appellants.*

444 P. 2d 548

*John R. Faust, Jr.,* Portland, argued the cause for appellants. With him on the briefs were Cake, Jaureguy, Hardy, Buttler & McEwen, Portland.

*Thomas N. Trotta,* Assistant Attorney General, Portland, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, Salem, and H. J. Belton Hamilton, G. Dwyer Wilson, Dale W. Conn, Victor Levy and Albert Menashe, Assistant Attorneys General, Portland.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and RODMAN, Justices.

O'CONNELL, J.

This is an action by the Labor Commissioner of the State of Oregon on twenty-three assigned claims for unpaid wages. The trial court held that defendants were liable on nineteen of the claims for a total of $4,267.88 in wages and $11,186.70 in penalties. The trial court also assessed a Commissioner's penalty of $422.89 and allowed plaintiff attorney's fees in the amount of $1,000. Defendants appeal.

In June of 1965, defendants Jim Lee and Ida Lee, their sons Eddie and Melvin Lee and one Harvey Isaacs formed Ed Lee, Inc., a corporation which was to operate a bar and restaurant in Portland.

Following the organizational meeting the operation of the business was left almost exclusively in the hands of Eddie Lee and his wife, Margo. Corporate formalities, such as the holding of shareholder and director meetings, were given little attention. Eddie registered the name "China Doll" under which the restaurant operated. Eddie and Margo entered into a lease for the restaurant premises and Eddie procured a liquor license in the name of Ed Lee, Inc.

A corporate bank account was opened, but although defendants were authorized to become signators and although it was provided that checks should be signed by at least two officers, only Eddie's signature was on file at the bank. Checks drawn on this account, inscribed "China Doll Restaurant," were signed only by Eddie and without any indication of his representative capacity.

Although defendants had a substantial financial interest in the restaurant, they did not play an active role in its management until about November 1, 1965. There was testimony that defendants' objective was to "back" their son, Eddie, in the restaurant adventure. Defendants did appear on the premises occasionally and apparently manifested their disagreement with the way Eddie and Margo were handling the business. Jim Lee, in fact, drew a salary of $1,736 for the period from September 1, 1965 to October 31, 1965. However, the wage claimants (apart from those hired by defendants after November 1, 1965) assumed that Eddie was their principal employer and were not aware that a corporation was involved.

The business was not successful. By October 31, 1965, a number of checks drawn on the corporate account, including those issued to the wage claimants for October wages, had been dishonored for lack of sufficient funds. On the night of October 31st or the early morning of November 1st, Eddie informed defendants that he was going to California and that they should take control of the management of the China Doll.

The defendants testified that they immediately informed Harvey Isaacs and Melvin Lee of Eddie's departure and a meeting followed. They further testified that it was agreed at this meeting that defendants

should manage the restaurant. The testimony does reveal that defendants did not intend this to be a "permanent arrangement." There is a conflict in the testimony as to whether this belief was based on an expectation that Eddie would return or a belief that the restaurant would be sold as soon as possible. The locks on the restaurant were changed, but it is not clear whether this took place before or after Eddie left. A sale clearly was attempted some time after Eddie left. However, Eddie did in fact return and when he did defendants relinquished control of the business to him.

When, on November 1, 1965, the defendants took over the management of the business they gave no indication to employees that they did so as representatives of a corporation. No significant changes were made in the operation except that all transactions were conducted on a cash basis. According to the testimony, cash was necessary because the purveyors would no longer accept credit and defendants could not draw checks on the corporate account. There is evidence that proceeds of the business not disbursed to employees and creditors were deposited in defendants' personal bank account. There is also evidence that no bills of the China Doll were ever paid from the personal account. Defendants testified that they paid out of personal income an amount equal to that deposited in their personal account. However, defendants could not account for $843 of the proceeds.

Many of the claimants, who had not received their wages for October, continued to work at the China Doll after defendants took over its management. These claimants called defendants' attention to the fact that checks issued for October wages had been dishonored. Defendant Ida Lee began paying these claims "bit by bit" out of business proceeds. On more

than one occasion she indicated that the checks would be paid. A record of the amounts paid was kept by notations on the dishonored checks as to outstanding balances. When a check was paid in full it would be endorsed by the claimant-payee. At least one of the claimants who did not work after October 31, 1965, Tommy Rulloda, was paid part of his wage claims as represented by dishonored checks. Certain other wage claimants were hired after November 1, 1965 and claimed only wages earned while defendants were managing the China Doll.

Defendants' efforts to save the business failed and the China Doll was closed about December 2, 1965. It was re-opened again from about December 3, 1965 to December 5, 1965 under Eddie's control, but apparently none of the wage claims derive from this brief period of operation. Eventually all the wage claims were assigned to plaintiff.

After efforts to collect the claims from the defendants failed, suit was filed in the Multnomah county circuit court. During the trial the parties agreed to stipulate the amounts owed to each of the claimants accruing before and after November 1, 1965. The circuit court entered judgment against defendants personally for wage claims accruing after November 1, 1965 on the theory that defendants had acted as agents for an undisclosed principal. Judgment was also entered against defendants for "certain" claims based on wages earned *prior to* November 1, 1965 for reasons that are not clear. Recovery was allowed on nineteen of the twenty-three claims; fourteen of the claims were adjusted in amount by a court-appointed referee. The final judgment also included penalties assessed under ORS 652.150 and ORS 652.350. Defendants concede liability for wages earned *after* November 1, 1965,

but they appeal from that part of the judgment imposing liability on them for claims based on wages earned *prior to* that date and also from that part of the judgment assessing statutory penalties.

In entering judgment against defendants the trial court found:

> "* * * [T]he Court is adopting the theory of law as expressed in plaintiff's well-prepared memorandum on the law except as to the liability of the defendants for Eddie's operation * * * * *. The Court is not finding defendants liable for unpaid wage claims of Eddie and Margo Lee except where they specifically paid or agreed by endorsements and written notes on checks, etc."

The trial court also found that the wage claimants had been employed "at the special instance and request of the defendants"; that defendants, in failing to conduct the banking and financial transactions in accordance with the By-Laws of the corporation, lost the immunity from personal liability which otherwise would have been provided by the corporate form; and that defendants had promised each of the wage claimants who worked prior to November 1, 1965 that if they would continue to work for them they would be paid all back wages due them. It is difficult to determine from these findings the specific theory upon which the judgment was based.①

It seems that the trial court based liability for wages earned prior to November 1, 1965 on the exist-

---

① There are allegations in the brief on appeal and certain evidence which would tend to suggest misappropriation of corporate assets, confusion of personal and corporate assets which prejudiced claimants' claims and the disregard of the corporate form justifying the imposition of personal liability on defendants. These theories do not appear to have been seriously advanced by plaintiff. Even if they were, the evidence was not sufficient to warrant their application.

ence of an enforceable agreement that the defendants would pay the claimants. Apparently this conclusion was reached upon the basis of the evidence that defendants made part payment of some of the wages for that period and the fact that in some instances defendant Ida Lee made notations of such partial payments on the dishonored checks which the claimants had received from Eddie Lee. The principal question on this appeal is whether there is sufficient evidence to support the trial court's finding.

The mere fact that Ida Lee paid some of the wages earned prior to November 1, 1965 does not prove that she and her husband agreed to pay the wages so earned. The payment of debts incurred by others does not, in itself, create an inference that the payment was made pursuant to a legal obligation to do so. Not infrequently third party debts are discharged by those who have no duty to pay them. Ida Lee may have made the payments in this case simply because she felt a moral obligation to discharge the debts incurred by her son. Nor can a promise to pay be inferred from the fact that she noted the amount of the partial payment on the back of the bad checks presented to her. That conduct was nothing more than an acknowledgment that the debt was owing and Ida Lee's willingness to pay it.

Some of the employees testified that Ida Lee expressly agreed to pay the back wages. This she denies. Assuming that a promise was made, it would not create a binding contract unless there was consideration for the promise. The evidence relating to consideration is sparse. It is argued that such consideration can be found in the employee's agreement to continue working for defendants if back wages were paid. We do not find sufficient evidence in the record to

support plaintiff's theory that the payment of back wages was agreed upon as consideration for the employees remaining on the job.

Plaintiff contends that even if an agreement to pay back wages cannot be established, defendants are liable under ORS 652.310 (1) as successors to the business of a former employer. The statute reads as follows:

"(1) 'Employer' means any person who in this state, directly or through an agent, engages personal services of one or more employes and includes any successor to the business of any employer, or any lessee or purchaser of any employer's business property for the continuance of the same business, so far as such employer has not paid employes in full. * * *"

■ The statute is not applicable to the circumstances of this case. The statute was not intended to impose liability upon one who merely takes over the management of a business owned by another. In the present case the ownership of the business remained in the corporation. The management shifted from Eddie Lee to defendants. The employees may have thought that a transfer of the business had been effected, but this is not important because the statute purports to define "successor" in terms of what in fact exists and not what the employees might mistakenly assume the facts to be. In operating the restaurant after Eddie Lee departed defendants were agents for an undisclosed principal, Ed Lee, Inc. Under well-established principles of the law of agency defendants can be held liable individually upon contracts entered into without disclosing the agency. But defendants did not enter into a contract to pay the wages earned prior to November 1, 1965 and they are not liable under ORS 652.310 (1) as successors to the business of the

corporation because they did not acquire any interest in the business from the corporation but simply acted as agents for it.

We now consider defendants' liability for penalties imposed by the trial court under ORS 652.150 and ORS 652.350. ORS 652.150 provides as follows:

"If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued."

■ Since defendants had no obligation to pay wages which were earned prior to November 1, 1965, no penalty can be imposed upon them for the failure to pay such wages. Their liability for penalties, if any, would be for their failure to pay wages earned after November 1, 1965.

■ ORS 652.150 authorizes the imposition of a penalty only if the employer *wilfully* fails to pay his employee's wages. An employer acts wilfully if, having the financial ability to pay wages which he knows he owes, fails to pay them. The statute was not intended to impose liability where the employer's refusal to pay wages is based upon a bona fide belief that he is not obligated to pay them.[2]

---

[2] State ex rel Nilsen v. Johnston, 233 Or 103, 377 P2d 331 (1962); Nordling v. Johnston, 205 Or 315, 283 P2d 994, 287 P2d 420, 48 ALR2d 1369 (1955); Davis v. Morris, 37 Cal App2d 269, 99 P2d 345 (1940).

■ In the present case defendant might well have assumed that because the corporation was liable for the wages they, as agents for the corporation were not liable. As we have noted, defendants' liability was based upon their failure to disclose their agency. If they knew they were liable for wages incurred during their management of the restaurant as agents for an undisclosed principal and they refused to pay wages due, there would be some basis for arguing that their conduct was "wilful." But plaintiff has the burden of proving wilful conduct on the part of the employer and here he failed to prove it. Plaintiff failed to show that defendants had knowledge of their liability and in the absence of such proof defendants should have the benefit of a presumption that they acted in reliance upon the protection from liability which the corporate form normally provides.

Penalties were also imposed upon defendants under ORS 652.350 which provides as follows:

"Upon being informed of a wage claim against an employer or former employer, the commissioner shall, if such claim appears to be just, immediately notify the employer or former employer of such claim by mail. If the employer or former employer, fails to pay the claim or to make satisfactory explanation to the commissioner of his failure to do so, within 30 days thereafter, the employer or former employer shall be liable to a penalty of 10 percent of that portion of the claim found to be justly due. The commissioner shall have a cause of action against the employer or former employer for the recovery of such penalty, and the same may be included in any subsequent action by the commissioner on said wage claim, or may be exercised separately after adjustment of such wage claim without court action."

■ It is not clear under what circumstances this statute becomes operative. Plaintiff concedes that he has the burden of proving that a satisfactory explanation of the employer's failure to pay the wage claim was not given. Plaintiff introduced into evidence notices of the wage claims of five employees. But there is no evidence in the record as to whether defendants ever responded to the notice. The burden was on plaintiff not only to show that he sent the notice but also that defendants did not respond within 30 days or that they responded and attempted to explain why the wages were not paid. Not having produced this evidence, plaintiff is not entitled to recover the penalty.

The judgment is reversed and remanded for the entry of a judgment consistent with this opinion.