Argued April 4, affirmed as modified May 24, 1973

HEKKER, *Respondent, v.* SABRE
CONSTRUCTION COMPANY, *Appellant.*

510 P2d 347

*Douglas G. Beckman,* Portland, argued the cause for appellant. With him on the briefs were Black, Kendall, Tremaine, Boothe & Higgins.

*Stephen B. Herrell,* Portland, argued the cause for respondent. With him on the brief were McMenamin, Jones, Joseph & Lang.

McALLISTER, J.

This is an action at law brought by the plaintiff Hekker to recover commissions earned as a salesman for the defendant Sabre Construction Company. The case was tried *sans* jury and the trial court found for plaintiff. Defendant appeals and plaintiff cross appeals from the denial of his right to attorney fees and a penalty.

■ This is one of a disconcerting number of cases in which the appellant, in a case tried by the court without a jury, attempts to obtain a retrial of the facts by broadly criticizing the judgment instead of alleging precise assignments of error as required by

our rules. We decline to be taken in by this gambit and will not review *de novo* actions at law, whether tried by a jury or by the court.

The controlling issue is the construction of a provision in the contract between plaintiff and defendant. There is no dispute about the facts, which we will briefly summarize. Plaintiff was employed by defendant from June 3, 1968, until January 30, 1970, first under an oral agreement, and then under two successive written agreements, all of which provided that plaintiff was to be compensated only by a commission of the gross sales price of each sale. Plaintiff was entitled at the end of each accounting period to the commissions earned less his draw and any expenses paid on his behalf by the company.

The trial court found that plaintiff's employment covered three accounting periods and that for period No. 1 defendant owed plaintiff net commissions of $1,098 and for period No. 2 $1,542. The court gave plaintiff judgment for these two amounts plus interest.

It appears that during accounting period No. 3, from October 1, 1969, to January 31, 1970, plaintiff's draw and expenses exceeded his commissions and defendant contends that because this deficit in period No. 3 exceeded the net commissions earned in the first two accounting periods, it did not owe plaintiff anything. The answer to this contention depends on the construction of the following provision of the contract:

> "Should the employee's commission account show a deficit balance, he will not be required to repay the company the amount of the deficit."

According to defendant this provision means that although plaintiff need not repay any deficit, the de-

fendant could carry forward or back any deficit and offset it against any net commissions earned in another accounting period.

■ As a general rule the construction of a contract is a question of law for the court. However, if the contract is ambiguous evidence may be admitted tending to prove the meaning intended by the parties and under those circumstances the meaning of the contract will be decided by the trier of fact. *Rolfe v. N. W. Cattle & Resources, Inc.*, 260 Or 590, 600-601, 491 P2d 195 (1971); *May v. Chicago Insurance Co.*, 260 Or 285, 292-294, 490 P2d 150 (1971).

■ In this case the contract from the defendant's standpoint was at best ambiguous about defendant's right to carry forward or back a deficit from one accounting period to another and extrinsic evidence bearing on the parties' intent was admitted. The trial court expressly found that defendant could not carry forward or backward any excess of draw and expenses over earned commission and this finding is binding on us.

Defendant also contends that the court erred in crediting plaintiff with commissions earned from the date the purchase contracts were signed by the customers instead of when the jobs were "completed and accepted by the customer" as provided by the agreements. This contention was made despite testimony by defendant's president that "in practice, plaintiff was credited with commissions on the dates the job contracts were signed by the customer".[1]

We need not determine, however, whether the trial court erred in this respect, as defendant's own

---

[1] Defendant's Brief p 4.

computations show that the alleged error did not prejudice defendant. If plaintiff's commissions were credited as of the date the individual jobs were completed and accepted by the customer, as defendant argues they should have been, the total commissions for the third and final accounting period would amount to $9,305. Total draws and expenses during that same period were $6,354. For the final accounting period alone, then, net commissions due would amount to $2,951 under defendant's computation. The trial court held plaintiff was entitled to a total of $2,640. As we have affirmed the trial court's holding that deficits could not be carried forward from prior accounting periods, it is evident that the trial court's method of computation is more favorable to defendant than that which it argued for here. If there was error, defendant has not been injured.

■ We turn next to the questions raised by plaintiff's cross appeal. Plaintiff argues that the trial court erred in holding that he was not entitled to recover attorney fees and the statutory penalty for failure to pay wages due upon termination of employment.

ORS 652.200 (2) provides:

> "In any action for the collection of wages * * * the court shall upon entering judgment for the plaintiff, include in such judgment * * * a reasonable sum for attorney's fees for prosecuting said action, unless it appears that the employe has wilfully violated his contract of employment."

Plaintiff's right to recover under this statute depends upon whether his compensation is included within the meaning of "wages" as used in the statute. The term is not defined by statute for purposes of ORS 652.200 (2).

Plaintiff refers us to definitions in ORS 652.320

(applying to the statutory authority for the Commissioner of the Bureau of Labor to take assignments of wage claims and enforce them on behalf of the employees) and in ORS 652.210 (applying to statutory procedures in cases involving wage discrimination) which define wages broadly. These definitions, although they may give some indication of general legislative policy, are of no direct assistance in this case. The right to attorney fees in actions for wages dates from 1907,[2] and was originally part of an act which also regulated the payment of wages and provided that wages were due and payable immediately upon termination of employment under circumstances specified in the statute. The allowance of attorney fees was discretionary with the court until 1919, when it was made mandatory.[3] The Commissioner's authority to enforce wage claims dates from 1931,[4] and the wage discrimination statutes from 1955.[5] These are separate statutory schemes, enacted at different times and with different purposes, and their intended coverage is not necessarily identical with that of ORS 652.200.

In *Fenlason v. Pacific Fruit Package Co.*, 112 Or 633, 638, 230 P 547 (1924) the court said without elaboration that the attorney fee statute "is part of an act relating to the payment of wages by employers to employees, and cannot be extended to an action for commissions on sales." Plaintiff has urged that we reconsider this question, and we have done so. The opinion in *Fenlason* gives no reasons for the court's conclusion that commissions are not wages within the

[2] Oregon Laws 1907 c 163 § 3.
[3] Oregon Laws 1919 c 54.
[4] Oregon Laws 1931 c 287.
[5] Oregon Laws 1955 c 193.

meaning of the statute. It states, as an alternative
ground for the holding, that the statute is available
"only to a laborer who has given three days' notice of
his intention to quit the employment." 112 Or at 638.
The opinion cites *Olsen v. Heisen,* 90 Or 176, 175 P
859 (1918) which had so held. The court failed to note,
however, that after the decision in *Olsen v. Heisen,*
the statute had been amended to require three days'
notice only when the employee quit voluntarily.[9] Since
the statement of facts does not disclose that *Fenlason*
quit voluntarily, the court was apparently in error as
to its alternative holding. We are convinced that the
question of Fenlason's right to recover attorney fees
received inadequate attention in that case and, upon
reexamination of the question, we have concluded that
*Fenlason* was wrongly decided.

We have heretofore given liberal interpretation
to the term "wages" in the attorney fee statute in light
of its remedial purposes. *McGinnis v. Keen,* 189 Or
445, 221 P2d 907 (1950) held that "wages" included
payment on a piece-work basis. We said there:

> "The amended act appears to be concerned with
> the wages earned by all employees whose severance
> from their work occurred in any of the ways men-
> tioned in the act. Unless some meaning to the con-
> trary lurks in a word which needs construction,
> there is nothing in the statute which evinces a pur-
> pose to discriminate against the pieceworker. So
> far as we know, it is as necessary for him to re-
> ceive his wages promptly as it is for the worker

---

[9] Oregon Laws 1919 c 54. Three days' notice by an employee
who quits voluntarily remained a prerequisite to the recovery of
attorney fees until 1957, when the notice requirement was entirely
eliminated. Oregon Laws 1957 c 242 § 2. The elimination of this
requirement was apparently to make attorney fees available in a
greater proportion of wage claim actions.

whose wages are calculated upon a time basis." 189 Or at 453.

See, also, *Nordling v. Johnston,* 205 Or 315, 283 P2d 994, 287 P2d 420, 48 ALR2d 1369 (1955).

In *State ex rel Nilsen v. Ore. Motor Ass'n,* 248 Or 133, 432 P2d 512 (1967) the issue was whether vacation pay came within the meaning of "wages" in connection with ORS 652.330, providing for enforcement of wage claims by the Labor Commissioner. As discussed above, statutory definitions applying to that authority have no direct relevance here. Some of the reasoning in that opinion is enlightening here, however. It was pointed out that in construing a statute, words in common use are to be given their natural and obvious meaning, and

> "* * * That sense of the words is to be adopted which best harmonizes with the context and promotes the policy and objectives of the legislation. * * *" 248 Or at 137.

The opinion continues:

> "The policy of the statute is to aid an employe in the prompt collection of compensation due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employe from promptly collecting his agreed compensation. * * * The policy of the statute is analogous to the policy underlying ORS 20.080, which allows the collection of attorneys fees in certain small tort claims." 248 Or at 138.

The attorney fee statute is based on similar policy considerations, and we believe its language should be construed in the same spirit. In common usage, "wages" has both a narrow meaning, suggesting payment for stated, relatively brief, intervals of labor, and a broader meaning suggesting various forms

of payment for services rendered. It is, we believe, most consistent with the policies underlying ORS 652:200 (2) to give the word, as used in that statute, a broad construction commensurate with the statute's purposes.

Courts have frequently construed "wages" in remedial or protective legislation to include compensation in the form of commissions,[①] and we are of the opinion that ORS 652.200 (2) should be so construed. The trial court erred in holding that plaintiff was not entitled to recover attorney fees under the statute.

Plaintiff also claims that he is entitled to recover a penalty as provided in ORS 652.150:

> "If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or quits his employment, as provided in ORS 652.140, then, as a penalty for such non-payment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued."

We are not confronted here with the same problem in statutory construction, as the statute in terms applies

---

[①] See, e.g., First National Bank of Vista v. Hellen, 392 F2d 58 (9th Cir 1968); United States v. Fleming, 293 F2d 953, 958 (5th Cir 1961); In re Dexter, 158 F 788, 792 (1st Cir 1907); In re Fink, 163 F 135 (ED Pa 1908); Baltimore Trust Co. v. Rowe, 141 Md 155, 118 A 405, 406-407 (1922); Nelkin v. Carencon, 108 NJ Eq 42, 153 A 702, 703 (1931); Hamburger v. Corr, 157 Pa St 133, 27 A 681 (1893); In re Knaak, 256 Wis 463, 41 NW2d 625, 627 (1950).

to nonpayment of "wages or compensation." Before a penalty is awarded, however, it must appear that the nonpayment was "wilful." In *State ex rel Nilsen v. Lee*, 251 Or 284, 293, 444 P2d 548 (1968) we said:

"ORS 652.150 authorizes the imposition of a penalty only if the employer *wilfully* fails to pay his employee's wages. An employer acts wilfully if, having the financial ability to pay wages which he knows he owes, fails to pay them. The statute was not intended to impose liability where the employer's refusal to pay wages is based upon a bona fide belief that he is not obligated to pay them."

We held in that case that the burden is on the plaintiff to prove wilful conduct on the part of the employer. 251 Or at 294.

■ Plaintiff has not pointed to any evidence in this case which would require the trial court to find that defendant acted wilfully, as that term was defined in *Lee*. We have found none. For all that the record shows, defendant's failure to pay plaintiff his commissions was based on a bona fide belief that no commissions were due under the terms of the employment agreements. There was no error in this respect.

The case will be remanded to the court below for further proceedings for the determination of reasonable attorney fees, and for modification of the judgment to include that amount. In all other respects the judgment is affirmed.