AOYAGI, J.
*649 After the termination of his employment, plaintiff brought a wage action against defendant employer, which was referred to the trial court's mandatory court-annexed arbitration program. The arbitrator awarded plaintiff $3.40 in unpaid wages and $1,383.96 in penalty wages. The arbitrator also awarded plaintiff $6,310 in attorney fees under ORS 652.200(2), which generally entitles a successful plaintiff on a wage claim to "a reasonable sum for attorney fees." Plaintiff had requested a substantially greater fee award, but the arbitrator denied that request, largely due to the application of ORCP 54 E. That general rule of civil procedure limits the amount of a statutory fee award when-as occurred in this case-the prevailing party recovers less than the other party had voluntarily offered to pay in a qualifying offer to allow judgment. Also relying on ORCP 54 E, the arbitrator awarded $238 to plaintiff for costs incurred prior to defendant's offer, and $300.52 to defendant for costs incurred after defendant's offer.
The trial court affirmed the arbitrator's award, over plaintiff's exceptions. On appeal of the resulting judgment, plaintiff argues that the trial court erred. Analogizing ORS 652.200(2) to the statutes at issue in Powers v. Quigley , 345 Or. 432, 198 P.3d 919 (2008), and Wilson v. Tri-Met , 234 Or. App. 615, 228 P.3d 1225, rev. den. , 348 Or. 669, 237 P.3d 824 (2010), plaintiff argues that fee awards on wage claims are exempt from the application of ORCP 54 E. Plaintiff also challenges the trial court's allowance of an extraordinary fee to the arbitrator, arguing that the arbitrator's request for an extraordinary fee was untimely. For the reasons that follow, we affirm.
FACTS
Plaintiff worked as a service advisor at defendant's automotive dealership. Plaintiff's compensation included base pay, commissions, and bonuses. Defendant terminated plaintiff's employment in April 2014. On October 7, 2014, plaintiff's attorney sent a wage claim notice to defendant, which defendant received.[1] The notice asserted that plaintiff had worked an average of five hours of unpaid overtime each *650 week for two-and-a-half years, that plaintiff had not been timely paid all wages due at termination, and that defendant owed plaintiff unpaid wages and penalty wages in an unspecified amount.
On October 21, plaintiff filed a complaint in the trial court, asserting a claim for unpaid overtime and a claim for failure to pay all wages due at termination. On November 26, plaintiff filed an amended complaint, in which he dropped his overtime claim. Plaintiff continued to pursue his claim for failure to pay all wages due at termination, seeking "[u]npaid wages in an amount to be determined" and approximately $4,152 in penalty wages under ORS 652.150. In December 2014, the trial court referred the case to its mandatory court-annexed arbitration program.
On February 4, 2015, defendant offered to allow judgment for $2,000, exclusive of attorney fees and costs. That is, under ORCP 54 *492 E, defendant offered to stipulate to a judgment in plaintiff's favor in the amount of $2,000, plus plaintiff's reasonable attorney fees and costs incurred to date. Plaintiff did not accept the offer.
An arbitration hearing was held on May 6, 2015. Thereafter, the arbitrator awarded plaintiff $3.40 of unpaid wages, based on a commission miscalculation, and $1,383.96 in penalty wages under ORS 652.150, based on defendant failing to pay plaintiff for unused vacation time until two weeks after his termination. As for attorney fees, plaintiff requested approximately $62,500, pursuant to ORS 652.200(2). The arbitrator awarded $6,310. Most of the difference between the requested and awarded amount of attorney fees was attributable to the arbitrator's application of ORCP 54 E. Applying that rule, the arbitrator limited plaintiff's award to fees incurred through February 4, 2015, because defendant had made an offer of judgment on that date in the amount of $2,000 (exclusive of fees and costs), which was more than the $1,387.36 (exclusive of fees and costs) that the arbitrator had subsequently awarded to plaintiff.[2] As for costs, the arbitrator also applied ORCP 54 E, *651 awarding costs to plaintiff through February 4, 2015, later determined to be $238, and awarding costs to defendant after February 4, 2015, later determined to be $300.52.
The arbitrator then filed a motion with the trial court for an extraordinary arbitrator's fee of $2,500, based on Columbia County Circuit Court Supplemental Local Rule (SLR) 13.121. Plaintiff objected to the motion as untimely, arguing that SLR 13.121 provides for such a request to be made before commencement of the arbitration hearing. After hearing, the trial court granted the motion and allowed the extraordinary fee of $2,500.
In October 2015, the arbitrator filed the arbitration award with the trial court. That award reflected the arbitrator's decisions on the merits, attorney fees, and costs, and the trial court's ruling on the arbitrator's fee. Neither party requested trial de novo , as was available under ORS 36.425(2). However, plaintiff filed written exceptions to the attorney fee and cost awards, as permitted by ORS 36.425(6), challenging the arbitrator's application of ORCP 54 E. Twenty days later, the arbitrator's award was affirmed by operation of law. See ORS 36.425(6) ("If the judge fails to enter a decision on the award within 20 days after the filing of the exceptions, the award of attorney fees and costs shall be considered affirmed."). The trial court entered a general judgment, reflecting the principle award of $1,387.36 to plaintiff, an attorney fee award of $6,310 to plaintiff, a cost award of $238 to plaintiff, a cost award of $300.52 to defendant, and the division of the $2,500 arbitrator's fee between the two parties.
PLAINTIFF'S APPEAL
Plaintiff appeals the general judgment, raising three assignments of error. In his first assignment of error, plaintiff argues that the trial court erred by denying his exception to the arbitrator's application of ORCP 54 E to limit plaintiff's award of attorney fees and costs to those incurred through February 4, 2015. In his second assignment of error, plaintiff argues that the trial court erred by denying his exception to the arbitrator's application of ORCP 54 E to award costs to defendant for the period after February 4, 2015. In his third assignment of error, plaintiff argues that *652 the trial court erred in granting the arbitrator's motion for an extraordinary fee.
ARBITRATOR'S FEE
We begin with plaintiff's third assignment of error, as our discussion of that assignment is brief. When an arbitration award is filed under ORS 36.425(1) and no one requests trial de novo under ORS 36.425(2)(a), the judgment entered by the trial court based on the arbitration award generally is not appealable. ORS 36.425(3). We have recognized an exception to that general rule. If a party does not request trial *493 de novo but does file "written exceptions directed solely to the award or denial of attorney fees or costs," ORS 36.425(6), we have held that the party may appeal the judgment for the purpose of challenging the trial court's ruling on the exceptions, Deacon v. Gilbert , 164 Or. App. 724, 726, 995 P.2d 557 (2000). The appeal is limited "solely to the court's disposition of the exception[s]." Id . at 731, 995 P.2d 557.
Here, plaintiff challenges the amount of the arbitrator's fee. An arbitrator's fee may be awarded as a "cost" in the arbitration award, pursuant to UTCR 13.120(6), and that is what occurred in this case. We therefore assume without deciding that, under ORS 36.425(6), plaintiff could have filed a written exception to that cost in the arbitration award and that, under Deacon , we could have reviewed a denial of that exception. But plaintiff did not file a written exception to that portion of the arbitration award. Plaintiff had opposed the arbitrator's original motion requesting an extraordinary fee; however, in his written exceptions to the arbitration award, he was silent regarding the arbitrator's fee. Although the former opposition may have satisfied preservation principles, a written exception was necessary for appealability under ORS 36.425(6). See Deacon , 164 Or. App. at 731, 995 P.2d 557 (limiting appeal under ORS 36.425(6) "solely to the court's disposition of the exceptions"). We therefore reject the third assignment of error.
ATTORNEY FEES AND COSTS
Plaintiff's first and second assignments of error both turn on the application of ORCP 54 E in awarding *653 attorney fees and costs under ORS 652.200(2), so we address those assignments together, which is also how the parties briefed them. As to both assignments, plaintiff argues that the trial court erred in denying his exceptions because the arbitrator should not have applied ORCP 54 E when awarding fees and costs under ORS 652.200(2). Relying on Powers and Wilson , plaintiff asserts that ORCP 54 E does not apply to fee awards on wage claims, because ORS 652.200(2) and ORCP 54 E are irreconcilable, the former is more specific, and the former therefore controls. Defendant counters that ORS 652.200(2) is different from the statutes at issue in Powers and Wilson and does not conflict with ORCP 54 E. Defendant argues that the arbitrator properly applied ORCP 54 E in awarding fees and costs under ORS 652.200(2) and that the trial court correctly rejected plaintiff's exceptions.
We review a trial court's judgment affirming an arbitrator's determination of attorney fees and costs for errors of law. Rivera-Martinez v. Vu , 245 Or. App. 422, 428, 263 P.3d 1078, rev. den. , 351 Or. 318, 267 P.3d 158 (2011). Whether ORS 652.200(2) and ORCP 54 E are in conflict, such that the latter does not apply in awarding fees and costs under the former, is a question of law.
The dispute in this case turns on the relationship between ORS 652.200(2) and ORCP 54 E. In construing statutes, "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all." ORS 174.010 ; see also McLain v. Lafferty , 257 Or. 553, 558, 480 P.2d 430 (1971) (that is a "cardinal rule of statutory construction"). However, "if two statutes are inconsistent," such that it is not possible to give effect to both, "the more specific statute will control over the more general one." Powers , 345 Or. at 438, 198 P.3d 919.
We begin our analysis with ORCP 54 E, a general rule of civil procedure. ORCP 54 E provides that, if a party against whom a claim is asserted makes an offer to allow judgment, the claimant does not accept that offer, and the claimant fails to obtain a judgment more favorable than the amount of the offer, the claimant "shall not recover costs, prevailing party fees, disbursements, or attorney fees incurred *654 after the date of the offer." ORCP 54 E(3). That principle has been part of our state law in some form for over 150 years. See Powers , 345 Or. at 436, 443, 198 P.3d 919 (identifying former ORS 17.055 (1953), repealed by Or. Laws 1979, ch. 284, § 199, as the predecessor to ORCP 54 E); Colby v. Larson , 208 Or. 121, 125, 297 P.2d 1073 (1956) ("[ ORS 17.055 ] has been a part of the law of this state since 1862." ( *494 Citing General Laws of Oregon, Civ Code, ch. VI, title I, § 511, p. 276 (Deady 1845-1864).)). The current iteration, ORCP 54 E(1), allows an offer of judgment to be made "at any time up to 14 days prior to trial." Prior versions have allowed offers of judgment to be made until 10 days before trial, until 3 days before trial, or at any time before trial. See ORCP 54 E(1) (2007) ("at any time up to 10 days prior to trial"); ORCP 54 E (1981) ("at any time up to three days prior to trial"); ORCP 54 E (1979) ("at any time prior to trial"); Hammond v. N. P. R. R. Co. , 23 Or. 157, 158, 31 P. 299 (1892) ("at any time before trial" under the Codes and General Laws of Oregon, ch. VI, title I, § 520 (Hill 2d ed. 1892)).
On its face, ORCP 54 E applies to all civil cases in which attorney fees are available to the prevailing party, i.e. , all cases involving a statutory or contractual right to attorney fees. In Powers , however, the Supreme Court recognized a situation in which ORCP 54 E does not apply to a statutory fee award: when the specific statute providing for attorney fees is in direct conflict with ORCP 54 E, such that applying ORCP 54 E would defeat the statute's core purpose. Powers , 345 Or. at 443, 198 P.3d 919. Because plaintiff's first and second assignments of error depend entirely on analogizing this case to Powers and our subsequent decision in Wilson , we describe Powers and Wilson in some detail.
Powers involved an attorney fee award under ORS 20.080(1) (2005), amended by Or. Laws 2009, ch. 487, § 1, 3. That statute provided for a fee award to the plaintiff in a small-claims tort action if the plaintiff made a written demand on the defendant at least 10 days before commencing the action and the defendant did not offer to pay, prior to commencement of the action, an amount equal to or greater than the amount that the plaintiff was ultimately awarded. Powers , 345 Or. at 437, 198 P.3d 919. Specifically, the statute stated:
*655 "In any action for damages for an injury or wrong to the person or property, or both, of another where the amount pleaded is $5,500 or less, and the plaintiff prevails in the action, there shall be taxed and allowed to the plaintiff, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees for the prosecution of the action, if the court finds that written demand for the payment of such claim was made on the defendant, not less than 10 days before the commencement of the action or the filing of a formal complaint under ORS 46.465, or not more than 10 days after the transfer of the action under ORS 46.461. However, no attorney fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff, prior to the commencement of the action or the filing of a formal complaint under ORS 46.465, or not more than 10 days after the transfer of the action under ORS 46.461, an amount not less than the damages awarded to the plaintiff."
ORS 20.080(1) (2005).[3]
The defendant in Powers made an offer to allow judgment that the plaintiff did not accept, and, when the plaintiff failed to beat that offer in arbitration, the arbitrator applied ORCP 54 E to limit the plaintiff's fee award to fees incurred through the offer date. Powers , 345 Or. at 435, 198 P.3d 919. On review, the plaintiff argued that the trial court had erred because ORS 20.080 and ORCP 54 E were irreconcilable, such that the legislature could not have intended ORCP 54 E to apply to attorney fee awards under ORS 20.080. Id. at 436-37, 198 P.3d 919. After examining the text, context, and core purposes of ORS 20.080, the Supreme Court agreed. Id. at 437, 443, 198 P.3d 919.
The court recognized that, "when multiple statutory provisions are at issue," they must be construed, if possible, *656 "in a manner that will give effect to all." *495 Powers , 345 Or. at 438, 198 P.3d 919 (internal quotation marks omitted). However, "if two statutes are inconsistent," such that it is not possible to give effect to both, "the more specific statute will control over the more general one." Id. The court concluded that it was not possible to give effect to both ORS 20.080 and ORCP 54 E and that ORS 20.080, being more specific, therefore controlled. Powers , 345 Or. at 443, 198 P.3d 919. The court reached that conclusion by examining the text of the two statutes-which evinced a conflict "apparent from their text"-and the core purpose of ORS 20.080 -which would be defeated by the application of ORCP 54 E. Powers , 345 Or. at 440-41, 198 P.3d 919. With respect to the latter, the court explained that the policies underlying ORS 20.080 are "to encourage settlement of small claims," to use the risk of attorney fees to "pressure" tortfeasors and insurance companies into paying " 'just claims,' " and " 'to discourage plaintiffs from inflating their claims.' " Id. at 439, 198 P.3d 919 (quoting Fresk v. Kraemer , 337 Or. 513, 520, 99 P.3d 282 (2004) ). A "crucial feature" of the "pressure" that ORS 20.080 creates is the specific timeframe in which a defendant must offer to pay a valid claim to avoid attorney fees. Id . "[T]he legislature intended to provide an incentive to defendants to make those evaluations and offers before the plaintiff files an action , because that statute does not allow a defendant to limit the liability for attorney fees by making an offer to settle after the complaint is filed." Powers , 345 at 441 (emphases in original).
Thus, ORS 20.080 is not just a statute that provides for attorney fees on a particular type of claim-it is a statute that uses the risk of attorney fees as a means to an end. The "core purpose" of ORS 20.080 is to encourage prelitigation settlement of meritorious small tort claims. Powers , 345 Or. at 439, 198 P.3d 919. That purpose is achieved by distributing the risk of paying the plaintiff's attorney fees in a purposeful way: the defendant bears the risk if the defendant receives written notice of a valid claim and chooses not to pay it before an action is filed, while the plaintiff bears the risk if the plaintiff inflates the claim and chooses to file an action rather than accepting a valid offer. Id . at 439, 441, 198 P.3d 919. Applying ORCP 54 E therefore "would undermine the core purpose of ORS 20.080(1)," because it would change the calculus by allowing *657 the defendant to make an offer of judgment until 10 days before trial. Powers , 345 Or. at 440, 198 P.3d 919 (discussing 2005 version of ORCP 54 E). ORCP 54 E would give the defendant a "second chance" to avoid attorney fees, thereby eliminating or substantially diminishing the pressure that ORS 20.080 was intended to create. See id . at 443, 198 P.3d 919 ("The conflict that concerned this court in Colby was that, by allowing defendants a second chance to avoid attorney fees after the plaintiff had filed the action, former ORS 17.055 [ (the precursor to ORCP 54 E) ] eliminated a tortfeasor's incentive to settle prior to the filing of the action , which was the goal of ORS 20.080 [ (1953) ]."). In other words, with respect to small-claim tort actions, the legislature intended the settlement window in ORS 20.080 to apply instead of the settlement window in ORCP 54 E. As such, ORS 20.080 is exempt from the application of ORCP 54 E, and "an offer of judgment, made after a plaintiff has filed an action, will not serve to limit a plaintiff's entitlement to attorney fees under ORS 20.080(1)." Powers , 345 Or. at 443, 198 P.3d 919.
A year after Powers , we decided Wilson , which involved an attorney fee award under ORS 742.061(1). That statute provides for a fee award to the insured in an action on an insurance policy if "settlement is not made within six months from the date proof of loss is filed with [the] insurer" and the insured recovers more in court than any tender the insurer had made. ORS 742.061(1). Specifically, ORS 742.061(1) provides, in relevant part:
"Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."
*496 See also ORS 742.061(2) - (3) (limited exceptions for certain types of insurance).
In Wilson , we followed the same analytical path as the Supreme Court had in Powers to determine whether *658 the trial court erred in applying ORCP 54 E to a fee award under ORS 742.061(1). Based on the text of the statute and prior case law, we identified the purpose of ORS 742.061(1) as being "to expedite the processing of insurance claims and reduce litigation by providing an incentive for efficient claim resolution." Wilson , 234 Or. App. at 627, 228 P.3d 1225. "To further that policy, ORS 742.061 -like former ORS 20.080[4 ]-imposes a deadline on an insurer's tender of settlement." Id . That is, "[t]o defeat a plaintiff's entitlement to attorney fees under ORS 742.061, an insurer's tender must be made within six months of proof of loss." Id.
Given its similarities to ORS 20.080 -a core purpose of incentivizing prompt settlement of meritorious claims and the imposition of a specific offer deadline to effectuate that purpose-we concluded that ORS 742.061(1), like ORS 20.080(1), was irreconcilable with ORCP 54 E and that the more specific statute therefore controlled. See Wilson , 234 Or. App. at 628, 228 P.3d 1225. Like the situation in Powers , allowing the defendant a second chance to avoid attorney fees-after the six months provided by ORS 742.061(1) had passed-would have defeated the core purposes of the statute, which were achievable only by enforcing the six-month deadline. "[A]s in Powers , the core purposes of ORS 742.061 to reduce litigation and encourage efficient claims settlement would be defeated" by applying ORCP 54 E. Wilson , 234 Or. App. at 628, 228 P.3d 1225.
With that understanding of Powers and Wilson in mind, we turn to the facts of this case. Plaintiff was awarded attorney fees under ORS 652.200(2), which generally entitles a successful plaintiff on a wage claim to "a reasonable sum for attorney fees."[5] ORS 652.200(2) provides:
"In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the wages *659 became due and payable, the court shall, upon entering judgment for the plaintiff, include in the judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting the action, unless it appears that the employee has willfully violated the contract of employment or unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action."
Plaintiff argues that ORS 652.200(2) is akin to the statutes at issue in Powers and Wilson . That is, plaintiff argues that ORS 652.200(2) and ORCP 54 E are irreconcilable, that the former controls as the more specific statute, and that ORCP 54 E therefore does not apply to fee awards on wage claims. Defendant counters that ORS 652.200(2) is different from the statutes at issue in Powers and Wilson and that the trial court correctly rejected plaintiff's attempt to analogize ORS 652.200(2) to those statutes.
Like the Supreme Court in Powers , we begin by examining the text of ORS 652.200(2), which "is the starting point for interpretation and is the best evidence of the legislature's intent." PGE v. Bureau of Labor and Industries , 317 Or. 606, 610, 859 P.2d 1143 (1993). Doing so, we recognize several important differences between this statute and the statutes at issue in Powers ( ORS 20.080(1) ) and Wilson ( ORS 742.061(1) ).
The first critical difference is that both ORS 20.080(1) and ORS 742.061(1) are "beat the offer" statutes-just as ORCP 54 E is a "beat the offer" statute. That is, ORS 20.080(1) provides for an award of attorney fees to the successful plaintiff in a small-claim *497 tort action, unless "the court finds that the defendant tendered to the plaintiff, prior to the commencement of the action or the filing of a formal complaint under ORS 46.465, or not more than 10 days after the transfer of the action under ORS 46.461, an amount not less than the damages awarded to the plaintiff ." (Emphasis added.) Similarly, ORS 742.061(1) provides for an award of attorney fees to the successful plaintiff in an insurance action if the insurer did not settle the claim "within six months from the date proof of loss is filed with an insurer" and "the plaintiff's recovery exceeds the amount *660 of any tender made by the defendant ." (Emphasis added.) Both statutes are thus structurally similar to ORCP 54 E, which limits the amount of an attorney fee award if a party "fails to obtain a judgment more favorable " than an offer to allow judgment that was timely made before trial. ORCP 54 E (emphasis added).
By contrast, ORS 652.200(2) does not contain any "beat the offer" language. Instead, it simply provides for attorney fees in a particular type of action, subject to a few conditions, none of which involve beating an offer. ORS 652.200(2) is therefore unlike ORS 20.080(1), ORS 742.061(1), or ORCP 54 E, each of which expressly provide for the court to compare any offer that the defendant made by a certain date-respectively, before commencement of the litigation, within six months of receiving proof of loss, or up to 14 days before trial-to the amount that the plaintiff was ultimately awarded, as part of determining whether to award fees and in what amount.[6]
A second important difference is that ORS 20.080(1), ORS 742.061(1), and ORCP 54 E each create a defined window of time in which a defendant can avoid attorney fee liability (altogether or going forward) by offering to pay the full value of the plaintiff's claim after receiving notice of the claim and investigating it. That window opens as soon as the defendant is put on notice of the claim and closes on a date specified in the statute. Specifically, under ORS 20.080, a would-be plaintiff is required to give detailed written notice of a small tort claim to the defendant, and, if the defendant determines that the claim is valid, the defendant has until "the commencement of the action or the filing of a formal complaint under ORS 46.465, or not more than 10 days after the transfer of the action under ORS 46.461," to offer to pay the true value of the claim and thereby avoid any attorney *661 fee liability. ORS 20.080(1), (3) - (5). Under ORS 742.061(1), if an insured files proof of loss with the insurer, and the insurer determines that the claim is valid, the insurer has six months from the filing of proof of loss to offer to pay the true value of the claim and thereby avoid any attorney fee liability. See Wilson , 234 Or. App. at 627, 228 P.3d 1225. And, under ORCP 54 E, the defendant is necessarily on notice of the action (having been served) and has until 14 days before trial to offer to pay the true value of the claim and thereby avoid ongoing attorney fee liability.[7]
By contrast, under ORS 652.200(2), the plaintiff's right to attorney fees automatically attaches 48 hours after wages become due and payable. See ORS 652.200(2) (excluding "Saturdays, Sundays and holidays"). The 48-hour grace period allows employers a small margin for error, such that they do not become liable for attorney fees the very instant *498 that wages become overdue. However, it is not comparable to the settlement windows in ORS 20.080(1) and ORS 742.061(1), particularly because the 48 hours is not tethered in any way to the notice requirement and will almost certainly pass long before the employer knows that an employee is asserting a claim.
Successful wage claims do not require an employee to prove that the employer intentionally underpaid the employee's wages. See ORS 652.110 to 652.200 (imposing no state-of-mind requirement on a claim for unpaid wages). Even for penalty wages, which require "willfulness," ORS 652.150, the standard does "not necessarily imply anything blamable, or any malice or wrong toward the other party." Wilson v. Smurfit Newsprint Corp. , 197 Or. App. 648, 660, 107 P.3d 61, rev. den. , 339 Or. 407, 122 P.3d 65 (2005) (citation omitted). For example, in this case, there is no indication that defendant knew that it had miscalculated one of plaintiff's commissions and had underpaid him $3.40. Although employers are *662 required to keep records, see ORS 653.045(1)(b), nothing in the text, context, or legislative history of ORS 652.200(2) suggests that the legislature considered it unnecessary for employers to be notified of a claim as a predicate to trying to settle it. If the purpose of ORS 652.200(2) were to incentivize defendants to settle wage claims within 48 hours of learning of them-analogous to the purposes of ORS 20.080(1) and ORS 742.061(1) -the 48 hours would begin upon notice of the claim.
Indeed, in 2001, the legislature considered amending ORS 652.200(2) to create a settlement window tied to attorney fee liability. Under the proposed amendment, any employee asserting a wage claim would have had to give notice to the employer, at which point the employer would have had 10 days to pay the claim before attorney fee liability would attach. See HB 2500 (2001). That amendment would have made ORS 652.200(2) much more like ORS 20.080(1) and ORS 742.061(1). But the amendment met resistance, at least in part precisely because it would have given employers an opportunity to avoid attorney fee liability, and it was abandoned. See Testimony, House Committee on Business, Labor and Consumer Affairs, HB 2500, Feb. 20, 2001, Ex. D (statement of Oregon Law Center representative Michael Dale) (opposing bill because employers would be able to avoid attorney fee liability if they received notice and had 10 days to pay); Testimony, House Committee on Business, Labor and Consumer Affairs, HB 2500, Feb. 20, 2001, Ex. E (statement of SEIU Local 503 representative Rich Peppers) (similar).
Instead of creating a settlement window tied to attorney fees, the legislature ultimately added only a basic notice provision to ORS 652.200(2) -one that excuses a mandatory fee award if "the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action"-and did not provide for any period to respond to the notice and thereby avoid attorney fee liability. See Or. Laws 2001, ch. 279, § 1. Given the concerns expressed about the rejected amendment, the legislature appears to have understood in adopting the basic notice provision that it would result in employers not receiving notice of wage claims until after attorney *663 fee liability attaches. That understanding reflects the real world. It would be virtually impossible for an employee to retain an attorney,[8] for the attorney to send a wage claim notice to the employer, for the employer to receive the notice, for the employer to investigate the claim alleged in the notice, and for the employer to make an offer to pay the claim if valid, all in the 48 hours immediately after wages becomes due and payable. For example, in this case, plaintiff's attorney gave notice of the wage claim five months after attorney fee liability attached and two weeks before filing the action.
Of course, even after attorney fee liability has attached, an employer who receives notice of a wage claim can try to settle the claim. The whole point of adding the notice *499 provision in 2001 was to provide an opportunity to try to resolve wage claims before an action is filed. Belknap v. U.S. Bank National Association , 235 Or. App. 658, 671, 234 P.3d 1041 (2010), rev. den. , 349 Or. 654, 249 P.3d 542 (2011). But that purpose is unrelated to attorney fee liability . Because notice will inevitably be received after attorney fee liability attaches, an employer who offers to pay a valid wage claim in full upon receiving notice of the claim and determining its validity will still be liable for the plaintiff's attorney fees under ORS 652.200(2), if the plaintiff rejects the offer, regardless how much the plaintiff recovers at trial. It is only by application of ORCP 54 E that the employer's willingness to pay the claim voluntarily has any significance with respect to attorney fee liability. That is a critical distinction between ORS 652.200(2) and the statutes at issue in Powers and Wilson .[9]
There is a closely-related third difference between this statute and ORS 20.080(1) and ORS 742.061(1). Because ORS 20.080(1) and ORS 742.061(1) each create a settlement window-and use the risk of attorney fee liability to *664 incentivize settlement during that window-the defendants in Powers and Wilson each had received notice of the plaintiff's claim, had an opportunity to investigate and pay the valid portion of the claim, and chose not to do so before the legislatively imposed end of the settlement window. In those circumstances, applying ORCP 54 E would have given the defendants a "second chance" to avoid attorney fees that the legislature did not intend. Powers , 345 Or. at 443, 198 P.3d 919. That is not the case with respect to ORS 652.200(2). As already discussed, by the time an employer receives statutory notice of a wage claim, attorney fee liability will already have attached, so ORCP 54 E provides the only chance, not a second chance, to limit attorney fee liability.[10]
The dissent contests that point, asserting that "it would be absurd to assume that a court would not compare an amount of wages tendered by the defendant before the plaintiff filed suit" and that, "if no outstanding wages were due because the defendant tendered before the plaintiff filed suit, the plaintiff would have no claim to prevail on at trial, and would therefore have no attorney fees to recover." 298 Or. App. at 673, 447 P.3d at 504 (Egan, C. J., dissenting) (emphasis in original). But there is no distinction between a "tender" and an "offer" for present purposes, see Fresk v. Kraemer , 185 Or. App. 582, 590, 60 P.3d 1147 (2003) (noting that Oregon appellate courts have generally "equated 'tender' for purposes of ORS 20.080 with 'settlement offer' "), and the dissent fails to explain how an employer could force a former employee to accept payment on a disputed claim. If the employee accepted the offer and cashed the check, then, true, the employee likely would have no claim and would be in no position to demand attorney fees. Parties are generally not obligated to accept payment, however, on disputed claims. For example, the dissent does not explain how, in its view, defendant could have avoided paying plaintiff's attorney fees by simply offering plaintiff $2,000 during the two weeks between plaintiff sending notice of claim and filing a complaint-which occurred nearly six *665 months after any wages came due-when, according to the dissent, defendant's offer of $2,000 a little over three months later did not even cut off fees. Whether defendant offered to pay six months after the wages came due (upon receipt of the notice) or nine months after the wages came due (when the case was put into arbitration), ORS 652.200(2) permitted plaintiff to reject or ignore the offer, proceed to trial, and obtain attorney fees, and only ORCP 54 E would affect the amount of the resulting fee award. *500 That brings us to a final difference between this statute and the statutes at issue in Powers and Wilson . Like ORCP 54 E, both ORS 20.080(1) and ORS 742.061(1) use the threat of attorney fees to incentivize defendants to offer to pay meritorious claims in a certain timeframe (or else risk paying plaintiffs' attorney fees), while simultaneously incentivizing plaintiffs not to inflate their claims and not to reject valid offers (or else risk paying their own fees). ORCP 54 E, ORS 20.080(1), and ORS 742.061(1) each strike a different balance in terms of the timeframe involved, but they all use the risk of attorney fees to incentivize both parties to reach an efficient settlement. See Powers , 345 Or. at 439-41, 198 P.3d 919 ( ORS 20.080(1) encourages settlement of small claims both by pressuring tortfeasors and insurers to pay just claims and by discouraging plaintiffs from inflating claims); Elliott v. Progressive Halcyon Ins. Co. , 222 Or. App. 586, 594, 194 P.3d 828 (2008) ( ORCP 54 E encourages settlement in part by "penaliz[ing] a plaintiff who takes a matter to trial and prevails, but ultimately recovers less than what, in retrospect, was a reasonable offer of settlement").
By contrast, because ORS 652.200(2) does not provide employers with any opportunity to avoid attorney fees by offering to pay a valid claim after receiving notice of it, construing ORS 652.200(2) as not subject to ORCP 54 E would discourage efficient settlement. A plaintiff with a valid claim would have little incentive to accept an offer. Instead, he or she would have good reason to continue litigating-either in the hopes of obtaining a larger award or, at least, driving up the settlement value-because, so long as a single dollar was ultimately awarded, the employer would be liable for all of plaintiff's fees and *666 costs.[11] This case is not the most extreme example, but it is an example. Plaintiff had a valid claim for $1,387.36. At a point in time when he had reasonably incurred $6,310 in attorney fees to pursue that claim, defendant offered to pay plaintiff $2,000, plus attorney fees and costs. Plaintiff rejected defendant's offer, incurred over $56,000 in additional fees to continue litigating, was awarded less than the amount that defendant had offered to pay voluntarily, and then filed a fee petition for $62,500 in attorney fees. We are unpersuaded that the legislature intended ORCP 54 E not to apply in such circumstances.
For all of the foregoing reasons, we do not view ORS 652.200(2) as analogous to the statutes at issue in Powers ( ORS 20.080(1) ) or Wilson ( ORS 742.061(1) ). Of course, given the default rule that all parties bear their own attorney fees in litigation (the so-called "American rule"), any statute that provides for attorney fees to the prevailing party on a particular type of claim is necessarily using attorney fees to encourage compliance with the law in that area, to increase access to attorneys for those type of claims, to incentivize settlement of those type of claims, or all of those things. That is true not only of ORS 652.200(2) but of all attorney fee statutes. Attorney fee statutes inherently incentivize defendants to quickly pay valid claims rather than face a fee award, or, even better, to never violate the law in the first place. However, if all that was necessary for an attorney fee statute to conflict with ORCP 54 E is that the statute provides for mandatory fees, and that ORCP 54 E would limit the amount of those fees, then every mandatory fee statute would conflict with ORCP 54 E. Similarly, although the attorney fee provision in ORS 652.200(2) helps to address disparities in economic power between employers and employees[12] -as the dissent *501 correctly notes, *667 298 Or. App. at 677-78, 447 P.3d at 506-07 (Egan, C. J., dissenting)-many attorney fee statutes apply to types of conflicts that frequently involve disparities in economic power. E.g. , ORS 20.085 (providing for attorney fees to successful plaintiff for constitutional takings claim); ORS 20.107 (providing for attorney fees to successful plaintiff for unlawful discrimination claim); ORS 646.638 (providing for attorney fees to successful private-party plaintiff for unlawful trade practices claim); ORS 646A.476 (providing for attorney fees to successful plaintiff on warranty claim for assistive devices). We disagree with the dissent that, under Powers , any attorney fee statute that uses attorney fees to incentivize settlement or to recognize economic disparities is irreconcilably in conflict with ORCP 54 E.
Instead, both Powers and Wilson involved a particular type of statute-one that gives a defendant a particular period of time after receiving notice of a particular type of claim to investigate the claim and, if valid, offer to pay it, or else be liable for the plaintiff's attorney fees. Like ORCP 54 E itself, such statutes use the risk of attorney fees to facilitate efficient settlement of valid claims by incentivizing defendants to investigate and offer to pay valid claims and by incentivizing plaintiffs to accept valid offers. ORS 652.200(2) is not such a statute. We must construe ORS 652.200(2) and ORCP 54 E to give effect to both statutes if possible, see ORS 174.010, and, for the reasons discussed, do so. The trial court did not err in denying plaintiff's exceptions to the arbitrator's award regarding attorney fees and costs.
Affirmed.

Plaintiff's attorney first tried to send the notice a week earlier, but, according to plaintiff's attorney fee statement, the first notice was returned.

Based on his fee petition, plaintiff incurred more than $6,310 in attorney fees through February 4, 2015. In awarding $6,310, the arbitrator appears to have made some reductions unrelated to ORCP 54 E. Only the ORCP 54 E reduction is at issue.

ORS 20.080 has been amended since Powers , including to change the 10-day notice periods to 30 days, so we quote the version of the statute at issue in Powers , which appears to have been the 2005 version. All references to ORS 20.080 hereafter are to that version. Also, we note that, in Powers , the Supreme Court focused on the primary deadline in ORS 20.080(1), "the commencement of the action," and did not consider it necessary to discuss the alternative deadlines that apply if the defendant demands a jury trial (see ORS 46.465 ) or files a counterclaim exceeding a certain amount (see ORS 46.461 ). See Powers , 345 Or. at 437, 198 P.3d 919. We discuss ORS 20.080(1) consistently with how the Supreme Court discussed it in Powers .

ORS 20.080 remains in effect. The reference to "former ORS 20.080" appears to have been intended to refer to ORS 20.080 (1953). See Wilson , 234 Or. App. at 626-27, 228 P.3d 1225.

"The right to attorney fees in actions for wages dates from 1907." Hekker v. Sabre Construction Co. , 265 Or. 552, 557, 510 P.2d 347 (1973) ; see also Or. Laws 1907, ch. 163, § 3. Fee awards were initially discretionary but became mandatory in 1919. See Hekker , 265 Or. at 557, 510 P.2d 347 (citing Or. Laws 1919, ch. 54).

As the dissent notes, a defendant who does not make any offer is subject to attorney fees under ORS 20.080(1) or ORS 742.061(1), whereas ORCP 54 E assumes the existence of an offer. See 298 Or. App. at 672-73, 447 P.3d at 503-04 (Egan, C. J., dissenting). But that difference in phrasing is due to the fact that ORS 20.080(1) and ORS 742.061(1) preclude any fee award if the plaintiff fails at trial to beat a timely offer, whereas ORCP 54 E only limits the amount of an attorney fee award (to fees incurred before the offer) and therefore necessarily refers to "the offer." A defendant who makes no offer will always be subject to paying a successful plaintiff's fees, if fees are available.

Notably, the length of the settlement window provided in each statute appears to have been attuned to the type of action. A relatively short window applies to small claims. A longer window applies to insurance claims, which may be more complicated and involve larger sums. The longest window is in ORCP 54 E, which applies to civil actions generally, although the length of that window is mitigated by the fact that ORCP 54 E cuts off only post-offer attorney fees and costs, rather than precluding an award altogether like ORS 20.080(1) and ORS 742.061(1).

Retaining an attorney is a necessary step in the process because the notice provision only applies to employees who are represented by an attorney at the time of filing an action. See ORS 652.200(2) ("unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action" (emphasis added)).

It does not follow, as the dissent suggests, that the notice provision in ORS 652.200(2) is a "nullity." 298 Or. App. at 676, 447 P.3d at 505-06 (Egan, C. J., dissenting). The notice provision provides an opportunity to settle a wage claim before litigation, exactly as it was intended to do. But it does not provide an opportunity to avoid attorney fees by offering to do so.

It is also important to note that ORCP 54 E only limits the amount of fees in such circumstances. Having lost the gamble of declining an offer and proceeding to trial, the plaintiff will not be able to recover post-offer fees and costs under ORCP 54 E but, as occurred in this case, will still be entitled to fees and costs incurred before the offer.

Even if it were humanly possible for an attorney to get a wage claim notice to an employer less than 48 hours after a client's wages came due, the attorney would have good reason not to do so. Why would an attorney rush to do something entirely unnecessary and not statutorily required, when doing it in the normal course would ensure the client a right to attorney fees?

See Hekker , 265 Or. at 559, 510 P.2d 347 (recognizing the policy considerations that led the legislature to provide for attorney fees in certain types of actions, including wage actions and small-claim tort actions, that is, to aid plaintiffs in such actions in collecting amounts owed and to discourage defendants in such actions from using positions of economic superiority to discourage pursuit of claims); State ex rel. Nilsen v. Ore. Motor Ass'n , 248 Or. 133, 138, 432 P.2d 512 (1967) (same).