Submitted on the briefs May 1; decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings December 31, 2020

Beau MATHIS,
*Petitioner on Review,*

*v.*

ST. HELENS AUTO CENTER, INC.,
a domestic corporation,
*Respondent on Review.*

(CC 14CV15683) (CA A161404) (SC S067064)

478 P3d 946

Plaintiff, defendant's former employee, recovered on a wage claim in court-annexed arbitration. The arbitrator awarded plaintiff an attorney fee under ORS 652.200(2) and costs, but the arbitrator applied ORCP 54 E(3) to limit that award because the amount plaintiff recovered on his claim was less than the amount of an offer of judgment that plaintiff had rejected. The circuit court and the Court of Appeals affirmed the award. *Held*: (1) ORS 652.200(2), which provides that an employee who succeeds in an action to recover unpaid wages is entitled to attorney fees, and ORCP 54 E(3), which bars recovery of attorney fees and costs incurred after an offer of judgment when the plaintiff ultimately recovers less than the offer, cannot both be given effect; and (2) ORS 652.200(2) is the more particular provision and controls.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

David A. Schuck, Schuck Law, LLC, Vancouver, Washington, filed the briefs for petitioner on review. Also on the briefs were Karen A. Moore and Stephanie J. Brown.

Richard B. Myers, Bennett Hartman, LLP, Portland, filed the brief for respondent on review.

Shenoa Payne, Shenoa Payne Attorney at Law PC, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

_____

* On appeal from a judgment of the Columbia County Circuit Court, Ted E. Grove, Judge. 298 Or App 647, 447 P3d 490 (2019).

FLYNN, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

Garrett, J., dissented and filed an opinion, in which Duncan, J., joined.

**FLYNN, J.**

The dispute before us arises at the intersection of two potentially conflicting provisions that address plaintiff's right to recover attorney fees from defendant. The first is a statute, ORS 652.200(2), which provides that an employee who succeeds in an action to recover unpaid wages is entitled to "a reasonable sum for attorney fees" in addition to the other sums awarded in the judgment. The second is a rule of civil procedure, ORCP 54 E(3), which provides that a plaintiff who rejects an offer of judgment and ultimately fails to recover more than the offer "shall not recover costs, prevailing party fees, disbursements, or attorney fees incurred after the date of the offer." The issue is whether ORS 652.200(2) and ORCP 54 E(3) can be construed in a way that "will give effect" to both, in the words of the legislature's longstanding requirement for construing statutes. ORS 174.010. If not, then whichever is the more general provision must yield to the more particular. ORS 174.020(2).

In a divided en banc opinion, the Court of Appeals held that ORCP 54 E(3)[1] can be applied to wage claims without negating the effect of ORS 652.200(2) and thus that both can be given effect. *Mathis v. St. Helens Auto Center, Inc.*, 298 Or App 647, 667, 447 P3d 490 (2019). The dissenting judges reasoned that applying the limitation of ORCP 54 E(3) to claims subject to ORS 652.200(2) would conflict with the legislative intent behind that statute and concluded that the statute is the more specific and controls. *Id.* at 678 (Egan, C.J., dissenting). The question is obviously a close one that could benefit from legislative clarification, but we are persuaded by the reasoning of the dissent and, accordingly, reverse.[2]

---

[1] Except as otherwise indicated, all citations to ORCP 54 E(3) in this opinion are to the current version of the rule, which became effective January 1, 2016. Although plaintiff's fee award predates that effective date, the 2016 amendment made only one, nonsubstantive change to the text of ORCP 54 E(3). Council on Court Procedures, *Amendments to the Oregon Rules of Civil Procedure Promulgated by the Council on Court Procedures*, Dec 6, 2014, 40, http://www.counciloncourtprocedures.org/Content/Promulgations/PROMULGATED%20AMENDMENTS%20TO%20OREGON%20RULES%20OF%20CIVIL%20PROCEDURE%2012-6-14.pdf (accessed Dec 22, 2020).

[2] Plaintiff also challenged in the Court of Appeals the trial court's decision to permit the arbitrator to charge the parties a fee that significantly exceeded the presumptive $250 fee that is set by statute for parties to mandatory

## I.    FACTS

The facts pertinent to our review are procedural and undisputed. Plaintiff was employed by defendant for several years. Defendant terminated plaintiff's employment, and, several months later, plaintiff filed the present action alleging that defendant had failed to pay wages that were due at termination. In answer, defendant asserted that it had paid all wages due and also alleged several affirmative defenses.

The case was assigned to mandatory court-annexed arbitration,[3] and defendant made an offer of judgment under ORCP 54 E, which plaintiff rejected. The arbitrator ultimately found that defendant had failed to timely pay some of the wages that plaintiff claimed and that the failure was willful, entitling plaintiff to a statutory penalty. In addition, the arbitrator awarded plaintiff an attorney fee under ORS 652.200(2) and costs, but he applied ORCP 54 E(3) to limit those awards to fees and costs that plaintiff had incurred before defendant's offer of judgment, because that offer of judgment exceeded the amount that plaintiff had ultimately recovered on his claims. Plaintiff filed exceptions in the circuit court to the arbitrator's application of ORCP 54 E(3) to limit the award of fees and costs, but the award was affirmed by operation of law when the court failed to enter a decision within 20 days. ORS 36.425(6). As explained above, a divided Court of Appeals then affirmed the attorney fee award, and this court allowed review.

## II.    DISCUSSION

The area of intersection between ORS 652.200(2) and ORCP 54 E(3) comprises those actions for unpaid wages in which the employee has failed to accept an offer of judgment and then recovers an amount in the action that does

---

arbitration—in this case a fee that exceeded the value of plaintiff's award on the wage claim. The Court of Appeals determined that plaintiff had failed to raise the challenge below in a way that permitted the appellate court to review it, *Mathis*, 298 Or App at 652, and that issue is not before us on review.

[3] The circuit courts must require arbitration "in matters involving $50,000 or less." ORS 36.400(3). Following a decision from the arbitrator, parties to the arbitration have an opportunity to request a trial *de novo* in the circuit court or to request court review directed solely to an arbitration award or denial of attorney fees or costs. ORS 36.425(2)(a), (6).

not exceed the offer of judgment. According to plaintiff and to the Court of Appeals dissenters, the legislative intent underlying the mandatory fee award described in ORS 652.200(2) makes that statute inconsistent with the post-filing opportunity that ORCP 54 E(3) offers for defendants to limit their liability for fees. Although the legislature sometimes specifies the result that it intends for cases that are governed by potentially inconsistent statutes, such as through phrases like "except as provided in [ORS—-.—-]," *see, e.g.*, ORS 652.150(1), or "notwithstanding ORS [—-.—-]," *see, e.g.*, ORS 652.230(7), the legislature has not specified what it intends for cases that arise at the intersection of ORS 652.200(2) and ORCP 54 E(3). But the legislature has supplied general statutory construction guidance for conflicts that are not expressly resolved by the text of the competing statutes: ORS 174.010 directs that, "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"; and ORS 174.020(2) directs that, "[w]hen a general provision and a particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular." This court has explained how those statutory directives work together: "In short, if the court can give full effect to both statutes, it will do so, and if not, it will treat the specific statute as an exception to the general." *Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008).

Thus, the primary question is whether the competing provisions can be construed in a manner that will "give full effect to both." *Id*. To answer that question, plaintiff focuses on the degree of similarity between ORS 652.200(2) and a different fee-shifting statute that *Powers* held to be inconsistent with the version of ORCP 54 E(3) then in effect. *See* 345 Or at 443 ("Because ORCP 54 E prevents this court from giving full effect to ORS 20.080(1), we must treat the more specific statute as an exception to the more general one."). The fee statute at issue in *Powers*, ORS 20.080(1), provided at that time that plaintiffs who had made a written demand at least 10 days prior to filing a low-value tort claim would be entitled to recover "a reasonable amount" as attorney fees if they obtained a judgment for an

amount greater than any prefiling settlement offer from the tortfeasor.[4]

The court in *Powers* described the "axiomatic" inquiry "that, to determine whether we can give effect to both [provisions], we must decide the effect that the legislature intended those statutes to have." 345 Or at 438. The court first examined the text and context of ORS 20.080(1) to discern the legislative intent. *Id*. Comparing the text of that fee statute to the text of ORCP 54 E(3) led the court to conclude that there is a conflict between the provisions "on the basis of their statutory text alone." *Id*. at 441. Under ORS 20.080, the court explained, "a plaintiff is entitled to receive attorney fees if the plaintiff satisfies certain procedural requirements prior to filing the action," while under ORCP 54 E, a defendant is able "to cut off the plaintiff's right to attorney fees by making an offer of judgment after the filing of an action but before trial." *Id*. at 440. The court also considered what its prior decisions had identified as the "policies underlying" ORS 20.080(1), in particular the policy of "preventing tortfeasors and their insurers from ignoring just claims." *Id*. at 439. The court determined that the offer-of-judgment procedure spelled out in ORCP 54 E "allows a defendant to nullify, at least in part, the obligation to pay attorney fees that ORS 20.080(1) creates" and thereby "undermine[s] the core purpose of ORS 20.080(1), namely, to prevent tortfeasors and their insurers from refusing to pay just claims."[5] *Id*. at 440-41. Based on that determination, the court ultimately concluded that "ORCP 54 E prevents this court from giving full effect to ORS 20.080(1)" and that ORCP 54 E is the more general provision, so must yield in cases governed by ORS 20.080. *Id*. at 443.

In the present case, the Court of Appeals majority understood plaintiff's argument to depend on an analogy to

---

[4] ORS 20.080 was subsequently amended to require that the plaintiff provide written notice 30 days prior to filing the action, among other changes. Or Laws 2009, ch 487, §§ 1-4.

[5] Although this court's statutory construction decisions do not always focus on the legislature's "purpose" in enacting a statute, referring to "purpose" is one way of describing what the legislature intended. *See, e.g.*, *Lake Oswego Preservation Society v. City of Lake Oswego*, 360 Or 115, 143, 379 P3d 462 (2016) ("One relevant aspect of a provision's legislative history is the particular purpose for which it was created.").

*Powers*, so the majority resolved defendant's claim that the statutes conflict by comparing the text of ORS 652.200(2) to the text of the statute at issue in *Powers*, ORS 20.080(1).[6] *Mathis*, 298 Or App at 659. The majority identified "several important differences" between the two statutes, primarily related to the majority's conclusion that ORS 652.200(2) lacks a "settlement window"—a term that the opinion used to describe the prefiling waiting period that ORS 20.080(1) creates by requiring that the plaintiff give the defendant written notice of the claim and then wait a specific number of days before filing the action. *Id.* at 659, 661-62. As a result of the differences that it identified between the statutes, the majority concluded that ORS 652.200(2) is not analogous to the "particular type of statute" at issue in *Powers* (ORS 20.080(1)) and, therefore, must be construed in a way that also gives effect to ORCP 54 E(3). *Id.* at 666-67.

We undertake a slightly different approach. Although we agree that *Powers* lays out a framework to guide how we should resolve the dispute in this case, the ultimate holding of *Powers* is not the starting point. As the Court of Appeals dissent correctly emphasized, in determining whether ORS 652.200(2) can be given full effect if ORCP 54 E(3) is applied to wage claims, the analysis should start with identifying the legislative intent behind ORS 652.200(2). *Powers*, 345 Or at 438 ("[i]t is axiomatic that, to determine whether we can give effect to" competing statutes, courts must determine legislative intent behind those statutes, starting with examination of text and context); *see Mathis*, 298 Or App at 668 (Egan, C. J., dissenting). To determine legislative intent, we look primarily to the text and context of the statute because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (internal quotation marks

---

[6] The majority also compared ORS 652.200(2) to a third fee-shifting statute, ORS 742.061, which the Court of Appeals has held to be in conflict with ORCP 54 E(3). *Mathis*, 298 Or App at 657-58 (discussing *Wilson v. Tri-Met*, 234 Or App 615, 228 P3d 1225, *rev den*, 348 Or 669 (2010), which concluded that ORS 742.061—providing for a fee award to the insured in an action on an insurance policy—cannot be reconciled with ORCP 54 E(3)). The question of whether ORS 742.061 can be harmonized with ORCP 54 E(3) is not before us in this case, and we do not otherwise discuss *Wilson*.

omitted). That inquiry persuades us that the legislative intent behind requiring employers to pay for the employee's attorney fees in a successful action to recover unpaid wages cannot be given full effect if those actions are subject to the fee-limiting procedure of ORCP 54 E(3).

A.   *The Potentially Conflicting Provisions*

   1.   *ORS 652.200(2)*

          The legislature first specified more than a century ago that an employee who must bring an action to collect unpaid wages may also recover "a reasonable sum for attorney's fees." Or Laws 1907, ch 163, § 315. Although initially the granting of fees was a matter of discretion for the court, *id.*, by 1919 the legislature had made an award of fees mandatory. Or Laws 1919, ch 54, § 1. As that 1919 law specified, if wages (among other debts) "were not paid for a period of forty-eight hours after proper demand for the payment thereof," then in an action to collect the unpaid wages,

> "the court *shall*, upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney's fees for prosecuting said action."

*Id.* (emphasis added).

          That attorney fee requirement, now codified at ORS 652.200(2), has remained essentially unchanged since 1919. The statute currently provides, in its entirety:

> "In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the wages became due and payable, the court shall, upon entering judgment for the plaintiff, include in the judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting the action, unless it appears that the employee has willfully violated the contract of employment or unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action."

ORS 652.200(2). That text reveals several facets of the statutory right. First, the right to fees is tied to the filing of an

"action" that results in "judgment for the plaintiff." Second, the right to fees is contingent on a 48-hour prefiling waiting period, which, in the statute's present iteration, runs from the date "the wages became due and payable." Third, the right to fees depends on whether "the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action." Finally, when those requirements are met (and absent a willful breach of contract by the employee), the award to an employee of "a reasonable sum for attorney fees at trial and on appeal for prosecuting the action" is mandatory and is "in addition to the costs and disbursements otherwise prescribed by statute."

This court's prior constructions of the statute inform our understanding of what the legislature intended by requiring an award of attorney fees to employees who obtain a judgment for unpaid wages. *See, e.g.*, *State v. McAnulty*, 356 Or 432, 441, 338 P3d 653 (2014) (in examination of the text in context, "[w]e also consider this court's prior construction of the statutes at issue"); *State v. Cloutier*, 351 Or 68, 100, 261 P3d 1234 (2011) ("Our analysis of [the statute] is also informed by this court's prior construction of that statute or its predecessors."). This court has repeatedly concluded that, in requiring an award of attorney fees in a judgment for unpaid wages, the legislature intended to give effect to two related policies. The first is to aid employees "in the prompt collection of compensation due," and the second is to "discourage an employer from using a position of economic superiority as a lever to dissuade an employe[e] from promptly collecting" compensation that is due. *Hekker v. Sabre Construction Co.*, 265 Or 552, 559, 510 P2d 347 (1973) (quoting *State ex rel Nilsen v. Ore. Motor Ass'n*, 248 Or 133, 138, 432 P2d 512 (1967)); *see also Lamy v. Jack Jarvis & Co., Inc.*, 281 Or 307, 313, 574 P2d 1107 (1978) (concluding that the "central purpose" of the wage statutes—including ORS 652.200—is "that of assuring that one who works in a master and servant relationship, usually with a disparity of economic power existing between himself and his superior, shall be assured of prompt payment for his labors when the relationship is terminated"). Those policies are analogous, the cases have observed, to the policy considerations underlying ORS 20.080. *Hekker*, 265 Or at 559; *Nilsen*, 248 Or at 138.

Other provisions of Oregon's wages statutes, which are set out in ORS chapters 652 and 653, supply context that is relevant to our understanding of the legislative intent behind the fee-shifting mandate of ORS 652.200(2). *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (context of a statute "includes other provisions of the same statute and other related statutes"). Some of those provisions illustrate why this court has identified a legislative intention to deter employers from taking action that would discourage employees from pursuing the full amount of their wages that are due. For example, ORS 653.055(2) prevents employers from using "[a]ny agreement between an employee and an employer to work at less than" minimum wage to defeat a wage claim. And ORS 652.160 directs that, if there is a dispute about the amount of wages due at termination, the employer still "must pay, without condition," the amount "conceded by the employer to be due" and allow the employee to pursue the disputed balance.

Oregon's wage statutes also impose obligations on employers to know what wages are due and when those wages are payable. For example, every employer who must pay a minimum wage is required to keep a record of the "actual hours worked each week and each pay period by each employee." ORS 653.045(1). In addition, "every employer shall establish and maintain a regular payday, at which date the employer shall pay all employees the wages due and owing to them" and "shall provide the employee" an itemized statement on each payday that details how the wages payment was calculated. ORS 652.120; ORS 652.610(1). Finally, employers are directed that, upon the employee's termination, "all wages earned and unpaid" are "due and payable not later than the end of the first business day after the discharge or termination." ORS 652.140(1).

Thus, liability for fees under ORS 652.200(2) arises in a context that assumes that the employer will have had multiple prefiling opportunities to avoid incurring the obligation to pay the employee's attorney fees—first by paying all wages when due, next by paying the outstanding wage obligation at least within the 48-hour grace period, and finally even by paying the outstanding wage obligation at any time

before the employee has located an attorney and filed an action. After an action is filed, however, unless the employee's attorney has unreasonably failed to provide notice or unless the employee has breached a contract, a judgment for employee must include "a reasonable sum * * * for prosecuting the action" at trial and on appeal. ORS 652.200(2). That structure, under which the employer's obligation to pay attorney fees is determined entirely by actions that the parties have taken—or not taken—before the action is filed is similar to the structure of ORS 20.080 that *Powers* described as "nullif[ied], at least in part," by application of ORCP 54 E(3), under which a defendant is able "to cut off the plaintiff's right to attorney fees by making an offer of judgment after the filing of an action but before trial." 345 Or at 440.

Finally, relevant context also includes ORS 20.075, which specifies numerous factors that a court "shall consider" in determining the amount of fees to award when a statute or contract provides for mandatory fees, particularly including the "objective reasonableness" and "diligence of the parties in pursuing settlement of the dispute" and "the results obtained." ORS 20.075(1)(f), (2)(d); *see McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 93, 957 P2d 1200, *clarified and adh'd to on recons*, 327 Or 185, 957 P2d 1200 (1998) (considering ORS 20.075 as context for understanding meaning of fee statute). Under ORS 20.075, if an employee has persisted in an action to collect wages, despite the employer's offer to pay a reasonable estimate of wages due, that is always a factor that the court must consider when determining a "reasonable sum" of attorney fees under ORS 652.200(2). And if the employer honors its obligation under ORS 652.160 to pay the amount that it concedes to be due, yet the employee continues the litigation without obtaining a better result, then that lack of success is yet another factor that the court must consider when determining the "reasonable sum" of attorney fees.

    2.    *ORCP 54 E(3).*

ORCP 54 E(3) creates a different process. Although the provision is part of a procedural rule, our task—as with statutes—is to identify the intent behind the provision by

looking primarily to its text and context.[7] *See Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 381, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001) (explaining that, in general, we construe provisions of the ORCP through the same methodology that we employ to construe statutes, in that we look first to the text and context of the rule). Through several subsections, ORCP 54 E specifies: the process by which a defendant may make an offer to allow judgment in a specified amount, ORCP 54 E(1); the process by which the offer may be accepted, ORCP 54 E(2); and—at issue in this case—the consequences that may follow for a plaintiff who rejects the offer:

> "If the offer is not accepted and filed within the time prescribed, it shall be deemed withdrawn, and shall not be given in evidence at trial and may be filed with the court only after the case has been adjudicated on the merits and only if the party asserting the claim fails to obtain a judgment more favorable than the offer to allow judgment. In such a case, the party asserting the claim shall not recover costs, prevailing party fees, disbursements, or attorney fees incurred after the date of the offer, but the party against whom the claim was asserted shall recover from the party asserting the claim costs and disbursements, not including prevailing party fees, from the time of the service of the offer."

ORCP 54 E(3).

The rule offers both parties an incentive to compromise disputed claims. To the party defending a claim that carries a risk of fee-shifting, the rule provides an opportunity to limit the extent of that risk through an offer to pay

---

[7] In our construction of provisions of the ORCPs, our inquiry can differ slightly from the same inquiry with respect to a statute, because the rules are drafted and promulgated by the Council on Court Procedures and go into effect automatically, after an opportunity for amendment, repeal or supplementation by the legislature. *See* ORS 1.735(1) (authorizing Council to promulgate rules that will go into effect automatically following the close of the next legislative session, although "[t]he Legislative Assembly may, by statute, amend, repeal or supplement any of the rules"). The potential difference for purposes of discerning intent is that, "unless the legislature amended the rule at issue in a particular case in a manner that affects the issues in that case, the Council's intent governs the interpretation of the rule." *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382 n 2, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001). In this case, neither party addresses whether the pertinent intent behind the dispositive portion of ORCP 54 E(3) should be that of the Council or that of the legislature. And resolving that question is, ultimately, unnecessary to our resolution of this case.

what the defending party expects to owe following trial. Whether the plaintiff accepts or rejects the offer, it will have had the effect of cutting off the defendant's mounting liability for attorney fees, unless the plaintiff manages to recover more than the offer at trial. Although an ordinary offer or compromise, or tender of payment, might achieve the same result through the ORS 20.075 "reasonable fee" considerations, ORCP 54 E(3) provides a certainty that ORS 20.075 does not: it guarantees that fees will be limited if the plaintiff continues the litigation without recovering more than the offer, regardless of how objectively reasonable the plaintiff's decision to reject the offer may have been.

To the plaintiff pursuing a fee-shifting claim, ORCP 54 E(3) offers the threat that, if the judge or jury ultimately disagrees with the party's assessment of what is due, then liability for any fees or costs incurred after the date of the offer will be borne by the plaintiff and, in addition, that the plaintiff will also bear liability for costs that the defendant incurs after the date of the offer. Although a plaintiff will always have some financial incentive to accept the certainty of a settlement offer and some financial incentive to take the risk of pursuing a greater amount at trial, ORCP 54 E(3) shifts the balance toward settlement by increasing the financial risk attendant to choosing to pursue the claim through trial. Indeed, that is how this court previously described the intent behind the former offer-of-judgment statute, on which the Council on Court Procedures based ORCP 54 E(3):[8] As

---

[8] The history of the adoption of ORCP 54 indicates that the council intended section E, when initially adopted, to be "based on" a longstanding offer-of-judgment statute that has since been repealed, although the council's rule somewhat altered the consequence to a plaintiff who fails to accept an offer. Council on Court Procedures, Staff Comment to Rule 54, *reprinted in* Frederick R. Merrill, *Oregon Rules of Civil Procedure: A Handbook* 119 (1981) (citing *former* ORS 17.055 (1977), *repealed by* Or Laws 1979, ch 284, § 199). The former statute, and ORCP 54 as first promulgated, specified that the party asserting the claim would "not recover costs," but statutory attorney fees were sometimes treated as distinct from costs. *Former* ORS 17.055; ORCP 54 E (1979); *Pritchett v. Fry*, 286 Or 189, 192, 593 P2d 1133 (1979) (because the statute at issue provided that attorney fees were to be awarded "together with costs," it "impl[ied] that attorney fees and costs are distinct items"); *see also Carlson v. Blumenstein*, 293 Or 494, 503, 651 P2d 710 (1982) ("An offer of compromise under ORS 17.055 operates to cut off a plaintiff's rights to costs and disbursements. It does not concern attorney fees."). An amendment to ORCP 54 E the following year added the current requirement that "the party asserting the claim shall not recover costs, disbursements, *and attorney fees incurred after the date of the offer.*" ORCP 54 E (1980) (emphasis added).

this court explained in *Carlson v. Blumenstein*, 293 Or 494, 503-04, 651 P2d 710 (1982), the purpose of the statutory predecessor to ORCP 54 E(3) "was undoubtedly to encourage the settlement of cases and reduce court congestion by penalizing a plaintiff who fails to accept what, in retrospect, is seen to have been a reasonable offer."[9]

B.   *If possible, give full effect to all.*

Nothing in the discussion so far points out a clear inconsistency between ORCP 54 E(3) and ORS 652.200(2). Indeed, defendant argues that the two provisions both serve the purpose of encouraging employers to resolve wage claims more promptly. And in one sense they may: To the extent that ORCP 54 E(3) encourages employers to reasonably estimate and offer to pay wage claims prior to trial, the result seemingly complements the prompt payment of wages that ORS 652.200(2) is intended to accomplish. However, this court in *Powers* rejected a similar theory of compatibility between ORCP 54 E(3) and ORS 20.080. The opinion explained, and then rejected, earlier reasoning by the Court of Appeals that both ORCP 54 E(3) and ORS 20.080 could be given full effect because the statute provided an incentive for defendants to settle a claim prior to the filing of a complaint and the rule "provided an incentive to do the same after the filing of the complaint." 345 Or at 436, 443 (describing and disagreeing with the reasoning of *Bell v. Morales*, 207 Or App 326, 142 P3d 76 (2006)). Moreover, the ORCP 54 E(3) procedure is particularly incompatible with the goal of prompt payment of wages that the legislature intended to advance under ORS 652.200(2), because an ORCP 54 E(3) offer does not mean that the employer has paid the wage claim or even conceded that some portion of the wage claim is valid. Rather, it means that the employer has *offered* to pay some portion of the claim on the condition that the employee abandon the effort to collect any additional amount that the employee may contend is due. Viewed in that context, ORCP 54 E(3) is less a mechanism that facilitates payment of all wages due than it is a mechanism that encourages the employer to offer

---

[9] *Carlson* explained that some version of the offer-of-judgment statute has been a part of Oregon law since 1862. 293 Or at 503-04 (citing Deady's General Laws of Oregon § 511).

an estimate of what is due and encourages the employee to accept the employer's estimate.

As a result, the rule facilitates payment of all wages that are due only to the extent that the defendant's offer is an accurate estimate of the wages that are due, which is the first source of conflict between ORCP 54 E(3) and ORS 652.200(2). By creating an incentive for claimants to abandon any claim to more than the defendant's estimate, an ORCP 54 E(3) offer increases the likelihood that employees will be dissuaded from promptly and unconditionally collecting all wages that are due—contrary to the legislative intention underlying the mandatory award of fees to employees. *See Hekker*, 265 Or at 559; ORS 652.160 (describing employer's obligation to "pay, without condition, * * * all wages conceded by the employer to be due, leaving the employee all remedies the employee might otherwise have or be entitled to as to any balance the employee might claim").

Our decision in *Powers* points to another way in which ORCP 54 E(3) is in conflict with ORS 652.200(2). *Powers* explained that ORCP 54 E(3) offers defendants the opportunity to limit their potential attorney fee obligation by making an offer of judgment after an action has been filed. 345 Or at 440. That opportunity, the court concluded, "undermine[d] the core purpose" of ORS 20.080, which uses the risk of attorney fees if an action must be filed to create an incentive for defendants to evaluate and resolve claims "*before the plaintiff files an action.*" *Id.* at 440-41 (emphasis in original). The court reasoned that if, in the context of a claim governed by ORS 20.080, a defendant is able to reduce its attorney fee obligation "significantly by making an offer of judgment" after the plaintiff files an action, then "the defendant's incentive to settle a claim before the filing of an action is reduced, if not eliminated."[10] *Id.* at 443; *see Colby v. Larson*, 208 Or 121, 126, 297 P2d 1073, *reh'g den*, 208 Or 128, 299 P2d 1076

---

[10] The statement from *Powers* contains an element of hyperbole. As a practical matter, it is unlikely that ORCP 54 E would eliminate—rather than simply reduce—the incentive to pay claims without waiting for litigation, because ORCP 54 E limits but does not eliminate attorney fee liability. There is more precision in *Powers*'s other descriptions of the conflict—that the ORCP 54 E procedure "allows a defendant to nullify, at least in part, the obligation to pay attorney fees that ORS 20.080(1) creates." 345 Or at 440.

(1956) (observing that statutory predecessor to ORCP 54 E made it easier for a defendant to ignore a claimed liability "secure in the knowledge that if action should be brought, he could escape payment of an attorney's fee"). Defendant does not ask us to disavow *Powers*'s conclusion about the effect of ORCP 54 E on a defendant's incentive to pay without waiting for litigation. And that conclusion applies equally when the claim is one for unpaid wages, for which ORS 652.200(2) uses the risk of attorney fees if an action is filed to create an incentive for defendants to evaluate and resolve claims before the employee needs to file an action.

We recognize that our description of those two sources of conflict assumes a paradigm in which some employers fail to voluntarily pay the wages that they have agreed to pay and some employers use their superior economic position to dissuade employees from pursuing good faith claims. The dissent assumes a different paradigm—that the availability of ORCP 54 E(3) will not diminish a defendant's incentive to pay wages promptly and that employees who believe that an offer undervalues the claim will be in an economic position simply to "not accept it." 367 Or at 459 (Garrett, J., dissenting). Which paradigm most accurately describes the dynamic between twenty-first-century employers and their employees is not a question that we are asked—or equipped on this record—to resolve. But our past decisions make clear that the legislature assumed—and sought to address—a paradigm in which some employers would fail to promptly pay their employees the compensation that is due, unless forced to do so by a lawsuit, and some would leverage their position of economic superiority to "dissuade an employe[e] from promptly collecting his agreed compensation." *Hekker*, 265 Or at 559; *see also Lamy*, 281 Or at 313; *Nilsen*, 248 Or at 138. Although we reject any presumption that an employer acts in bad faith by opposing a wage claim, we cannot ignore what we have previously identified as the legislature's intention to discourage, through its mandate of attorney fees, the resistance of some employers to promptly paying the agreed compensation.[11] *See Hekker*, 265 Or at 559.

---

[11] The Court of Appeals majority dismissed the significance of that intention out of concern that "many attorney fee statutes apply to types of conflicts that frequently involve disparities in economic power." *Mathis*, 298 Or App at 667. There

And we cannot ignore our conclusion in *Powers* that ORCP 54 E reduces "the defendant's incentive to settle a claim before the filing of an action" because it creates the opportunity for a defendant to reduce its attorney fee obligation "significantly by making an offer of judgment" after the action has been filed. 345 Or at 443. That result placed the rule in an irreconcilable conflict with ORS 20.080, the goal of which the court identified as creating an incentive for defendants "to settle *prior to the filing of the action.*" *Id.* (emphasis in original). The dissent is mistaken that *Powers*'s conclusion about the effect of ORCP 54 E(3) can be disregarded because of the opinion's emphasis that "[a] crucial feature of" ORS 20.080 was the pressure that it placed on defendants to pay the low-value claim prior to the filing of an action. 367 Or at 461 (Garrett, J., dissenting) (quoting *Powers*, 345 Or at 439). As explained above, that is essentially the same pressure that the legislature intended to place on employers through the requirement of ORS 652.200(2) that employers who fail to pay wages—amounts that generally should be readily calculable—must also pay a reasonable attorney fee if the employee is forced to bring an action, as long as certain procedural requirements have been met prior to the filing of the action. Those prefiling requirements, which generally ensure that the employer has advance written notice of the wage claim, allow the employer to resolve the matter of unpaid wages before an action is filed and thereby to avoid liability for the employee's attorney fees.[12] Not only does ORS 652.200(2) create an incentive for employers to pay readily knowable financial obligations without waiting for the employee to file an action, a purpose that the statute shares with ORS 20.080, but, in addition, ORS 652.200(2) assumes that the relative financial positions of the parties will make such an incentive necessary. In the context of an

is a difference, however, between a statute that merely applies in a context that may involve disparities of economic power and a statute that reflects a legislative intention to "discourage an employer from using a position of economic superiority as a lever to dissuade an employe[e] from promptly collecting" compensation that is due. *See Hekker*, 265 Or at 559.

[12] We recognize that some wage claims may come as a surprise to even the most diligent employer, but the legislature appears to have offered those employers an opportunity to avoid fees with the requirement that the plaintiff's attorney must not have "unreasonably failed to give written notice" of the claim prior to filing the action. ORS 652.200(2).

action governed by such a statute, we are not persuaded that we can distinguish *Powers*'s conclusion that the effect of ORCP 54 E(3) is to "allow[ ] a defendant to nullify, at least in part, the obligation to pay attorney fees that [the statute] creates." 345 Or at 440. Accordingly, we conclude that in the context of a claim governed by ORS 652.200(2), allowing the employer to limit its fee obligation under ORCP 54 E(3) conflicts with the legislative intent underlying the statutory fee obligation.

C.   *The more particular should control.*

Ordinarily, our conclusion that the two provisions cannot both be given effect would take us to an analysis of which provision is the more general and which reflects the more particular intent that should control.[13] *See* ORS 174.020(2) ("When a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."). But two factors make that analysis unnecessary in this case. First, we are guided by our decision in *Powers* that, compared to ORS 20.080—which provides for fee-shifting on a specific category of claim—the procedural mechanism of ORCP 54 E(3) is more general, because it "applies to all civil proceedings." 345 Or at 443. Second, our analysis is shaped by the arguments raised by the parties. Here, defendant does not argue that we misidentified ORCP 54 as the more general provision in *Powers* or that the answer should be different in the event of a conflict with ORS 652.200(2). Indeed, both parties assume that ORS 652.200(2) is the more particular provision that should be paramount if it is not possible to give full effect to both provisions. Under the circumstances, we employ the reasoning of *Powers* and conclude that ORS 652.200(2)—which

---

[13] Justice Landau proposed in his concurring opinion in *State v. Vanornum*, 354 Or 614, 634, 317 P3d 889 (2013) (Landau, J., concurring), that the process by which the ORCPs are created means that "they are not statutes, unless they were affirmatively approved or amended by the legislature" and that "[t]he distinction matters," because "[t]o the extent that any rule conflicts with a statute enacted by the legislature, the rule is invalid." Neither party addresses the extent to which ORCP 54 E(3) is a product of legislative action or questions our implicit assumption in *Powers* that the rule has a force equivalent to statute. We decline to undertake that analysis *sua sponte* in a case that does not ultimately turn on that possible distinction.

applies to a specific category of claim—is more particular than, and is paramount to, ORCP 54 E(3), which "applies to all civil proceedings." 345 Or at 443. Any need to limit the attorney fees of an employee who unreasonably rejects a good faith offer or tender—as the dissent implies employee did here—can be addressed on a case-by-case basis under ORS 20.075(2), but the "reasonable" attorney fee required by ORS 652.200(2) cannot be categorically limited through ORCP 54 E(3).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**GARRETT, J.,** dissenting.

The majority concludes that the offer-of-judgment rule in ORCP 54 E(3),[1] which would otherwise apply in this case, irreconcilably conflicts with ORS 652.200(2) and therefore must give way. I respectfully dissent.

The facts of this case illustrate the good sense behind the "offer of judgment" rule. Plaintiff made a demand for unpaid wages, defendant rejected that demand, and plaintiff filed a complaint. Defendant subsequently made an offer of judgment for $2,000. If plaintiff had accepted that offer, he would have been entitled to $2,000—plus $6,310 for his attorney fees incurred through that date.[2] Plaintiff rejected the offer, however, and the matter proceeded to a final determination on the merits. Plaintiff ultimately recovered less than $1,400.

Although plaintiff had been made significantly worse off by rejecting the $2,000 offer and proceeding to a final determination, he sought attorney fees of $62,508 incurred through the end of the case. Under ORS 652.200(2), plaintiff was entitled to "a reasonable sum for attorney fees."

---

[1] As does the majority, I refer to the current version of ORCP 54 E. *See* 367 Or at 439 n 1 (so explaining).

[2] The offer stated that it was "exclusive of costs, disbursements, and attorney fees." Pursuant to ORCP 54 E(2), plaintiff would have been entitled to accept the offer, then request the fees incurred to date. *Id*. ("If the offer does not state that it includes costs and disbursements or attorney fees, the party asserting the claim shall submit any claim for costs and disbursements or attorney fees to the court as provided in Rule 68.").

Under ORCP 54 E(3), however, plaintiff was not entitled to attorney fees incurred after the offer of judgment, because he recovered less than the amount of the rejected offer. The trial court applied both those provisions and awarded plaintiff attorney fees of $6,310.

The application of ORCP 54 E(3) in this situation reflects the systemic waste involved in spending an additional $56,198 in attorney time to obtain a worse outcome for the client than was available through early settlement. Both parties would have benefited, and judicial resources been spared, if the offer of judgment had been accepted.

I understand the majority to agree that ORCP 54 E(3) exists to discourage such waste, and that that is a good thing. But the majority nonetheless concludes that applying ORCP 54 E(3) here would defeat the legislative objective in ORS 652.200(2). I disagree.

Both ORCP 54 E(3) and ORS 652.200(2) have the force of law in this state. To say that one of them shall not apply when it otherwise would, we must first conclude that it is not possible to give effect to both:

> "[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

ORS 174.010. Thus, the law contemplates that statutes and rules may be susceptible to multiple interpretations. As long as it is "possible" to construe two provisions in reasonable ways that allow them to operate harmoniously, that is what this court is required to do. As we explained earlier this year, "[w]e are to avoid a construction that creates a conflict or renders one statute ineffective." *Elkhorn Baptist Church v. Brown*, 366 Or 506, 523, 466 P3d 30 (2020). "Courts will go to great lengths to avoid concluding that statutes irreconcilably conflict." Jack L. Landau, *Oregon Statutory Construction*, 97 Or L Rev 583, 692 (2019).

No "great lengths" are required to see how ORS 652.200(2) and ORCP 54 E(3) can function together. The provisions address different questions. ORS 652.200(2) entitles a prevailing wage claimant to an award of attorney fees, but it says nothing about the amount of fees (beyond stating

that it must be "reasonable"). ORCP 54 E(3) says nothing about whether fees should be awarded in a given case; rather, where fees are available, that rule limits the amount of recoverable fees if a prevailing party obtains a result that is not better than an offer of judgment. When a trial court applies both provisions, as was done here, the result reflects a construction of the word "reasonable" in ORS 652.200(2) that mirrors the implicit policy statement in ORCP 54 E(3): It is not "reasonable" to recover attorney fees for time spent failing to improve on an offer of judgment, because that time was essentially wasted.

The only impediment to this understanding is if it is not "possible" to construe ORS 652.200(2) that way—that is, if the statute creates an absolute entitlement to a certain amount of attorney fees that ORCP 54 E(3) would remove. But that notion is belied by the word "reasonable" in the statute, which is not self-defining and invites consideration of context.

Rather than treat ORCP 54 E(3) as hopelessly in conflict with ORS 652.200(2), we should treat the former as context for the latter. As the majority notes, we can and should look outside the four corners of ORS 652.200(2) to understand what the statute means when it provides for "reasonable" fees. 367 Or at 446-47. The majority correctly explains that the amount of fees awardable under ORS 652.200(2) is subject to restrictions imposed by other laws— at the very least, the factors to determine a reasonable fee prescribed by ORS 20.075. 367 Or at 447. We have held that ORS 20.075 is context for statutes authorizing attorney fee awards, even when the statute authorizing fees had been enacted before ORS 20.075. *See McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 91-94, 957 P2d 1200, *clarified and adh'd to on recons*, 327 Or 185, 957 P2d 1200 (1998) (so holding for version of ORS 20.075 in effect at the time).[3]

---

[3]  In *McCarthy*, the court was considering the attorney fee provision of *former* ORS 659.121 (1998), *repealed by* Or Laws 2001, ch 621, § 90. 327 Or at 91. The court expressly noted that, "before the enactment of ORS 20.075, the Court of Appeals * * * had construed [*former*] ORS 659.121 [(1998)] to require the use of a different standard in awarding attorney fees to prevailing plaintiffs and to prevailing defendants." *Id*. at 93. Nevertheless, the court held that ORS 20.075 was context, *id*., and that *former* ORS 659.121 (1998) and ORS 20.075 should be "interpreted together," *id*. at 94.

Thus, when ORS 652.200(2) directs the award of reasonable attorney fees, the amount of those fees will be determined using the factors in ORS 20.075. That is true even though ORS 20.075 was not adopted until 1995, when ORS 652.200(2) had been in existence for decades. *Compare* General Laws of Oregon 1919, ch 54, § 1 (amending statute to provide for mandatory attorney fee award in predecessor to ORS 652.200(2), *former* Lord's Oregon Laws, title XXXVII, ch IX, § 5068), *with* Or Laws 1995, ch 618, § 6 (enacting original version of ORS 20.075).

But why not consider ORCP 54 E(3), too, as relevant context? Like ORS 20.075, ORCP 54 E(3) also addresses the amount of attorney fees and requires consideration of settlement discussions. And the "offer of judgment" rule now found in ORCP 54 E(3) has been law in Oregon (in various forms) since 1862.[4] Unlike ORS 20.075, what is now ORCP 54 E(3) predates what is now ORS 652.200(2) by roughly 50 years.[5] If ORS 20.075 has a claim to be relevant context for understanding the word "reasonable" in ORS 652.200(2), then ORCP 54 E(3) would seem to have at least an equal claim.[6]

In short, as a textual and contextual matter, ORS 652.200(2) and ORCP 54 E(3) are readily susceptible to constructions that allow them to be applied together.

I understand the majority's contrary conclusion to rest largely on a concern that applying ORCP 54 E(3) will undermine the legislative purpose behind ORS 652.200(2), to encourage the prompt and full payment of wage claims. The majority draws heavily on our decision in *Powers v. Quigley*, 345 Or 432, 198 P3d 919 (2008). For several reasons, I disagree.

First, the existence of ORCP 54 E(3) does not interfere with the incentive structure that the legislature set up

---

[4] *See Carlson v. Blumenstein*, 293 Or 494, 503, 651 P2d 710 (1982) (so noting regarding the predecessor to ORCP 54 E(3), *former* ORS 17.055 (1975), *repealed by* Or Laws 1979, ch 284, § 199).

[5] *See* 367 Or at 444 (explaining that what is now codified as ORS 652.200(2) originated in 1907 and has been essentially unchanged since 1919).

[6] Given that what is now ORCP 54 E(3) predates what is now ORS 652.200(2), it is worth noting that nothing in ORS 652.200(2) indicates that the legislature intended that the attorney fees it authorized *would not* be subject to ORCP 54 E(3)'s offer of judgment rule.

in ORS 652.200(2). An employer faced with a meritorious wage claim has an incentive to pay it promptly, because the attorney-fee provision in ORS 652.200(2) ensures that the employer will find it far more expensive to litigate and lose. ORCP 54 E(3) would frustrate ORS 652.200(2) if an employer could calculate that, by refusing payment, it could try to negotiate a *better* outcome through an offer of judgment. But that is not likely to happen. The moment an employer refuses a valid claim and a claimant proceeds to litigate, fees begin accruing and the claim grows more expensive. The employer has made a mistake; attorney fees will often dwarf the amount of the wage claim, as was true here. ORCP 54 E(3) allows the employer to stop the bleeding before trial by making an offer of judgment, but it still will have been a mistake: the employer would have been better off paying when the meritorious wage claim was made.

Put another way, ORCP 54 E(3) allows an employer to reduce the downstream *costs* of refusing a valid claim, but it will not make the employer better off than the employer would have been by paying early. ORS 652.200(2) still operates to ensure that an employer will find it more cost-effective to pay a valid claim fully and promptly. That core incentive remains intact whether or not ORCP 54 E(3) exists.

Nor is ORCP 54 E(3) likely to allow the employer to leverage a "low-ball" offer and pressure a claimant into settling for less than the fair value of the claim. To get any benefit from the rule, a defendant must offer an amount large enough to do at least one of two things:

- Persuade the plaintiff that it is a reasonable value for the claim.

- Be at least equal to the amount that the defendant expects that plaintiff would recover at trial.

Consider: If the plaintiff is not persuaded that the offer reasonably values the claim, then the plaintiff will not accept it. But if a rejected offer is not at least equal to what the defendant expects the plaintiff to recover at trial, then the

defendant cannot expect that ORCP 54 E(3) will limit the amount of attorney fees. In short, to get the benefit of ORCP 54 E(3), the offer of judgment must exceed one or both of those amounts.

That remains true even if the defendant has an informational advantage over the plaintiff. Suppose that a defendant makes an offer of judgment prior to discovery. If the plaintiff suspects that the offer does not reasonably value the claim, the plaintiff will reject the offer, and the matter will proceed to trial. But, in that event, the defendant knows that it will gain no benefit from having made the offer of judgment unless it was in excess of what the *defendant* concludes that the plaintiff is reasonably likely to recover at trial. To take advantage of ORCP 54 E(3), then, the defendant has an incentive to use an informational advantage to construct a fair offer.

In short, ORCP 54 E(3) does not change the fact that an employer will find it more cost-effective, as a result of ORS 652.200(2), to pay a valid claim promptly than to litigate. All that ORCP 54 E(3) can accomplish for the employer is to make the litigation path potentially less costly than it would otherwise be (though still more costly than prompt payment).

The majority, like the dissenting opinion in the Court of Appeals, concludes that that cost-lowering feature of ORCP 54 E(3) is what frustrates ORS 652.200(2), and in doing so draws heavily on our decision in *Powers*. That case is distinguishable.

*Powers* considered whether there was a conflict between the versions of ORCP 54 E(3) and ORS 20.080(1) in effect at that time. 345 Or at 432. At that time, ORS 20.080(1) provided for an award of attorney fees in tort cases involving $5,500 or less. *Id.* The statute then expressly addressed what should happen with attorney fees if the defendant had offered the plaintiff more than the plaintiff recovered at trial:

"'[N]o attorney fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff,

prior to the commencement of the action ***, an amount not less than the damages awarded to the plaintiff.'"

*Powers*, 345 Or at 437 (quoting relevant version of ORS 20.080(1)).

The statute thus expressly required the defendant to have tendered an amount to the plaintiff "prior to the commencement of the action." *See id. Powers* repeatedly emphasized that the source of the conflict arose from that aspect of ORS 20.080(1):

"A crucial feature of that 'pressure [on a defendant to set-tle],' *** is that it applies *prior to filing* the action. By the explicit terms of ORS 20.080(1), a tortfeasor can avoid an award of attorney fees under ORS 20.080(1) only by making an offer of settlement before the plaintiff files a complaint. A tortfeasor's offers made after that date do not affect the statutory right to attorney fees that ORS 20.080(1) creates."

345 Or at 439 (emphasis in original). ORCP 54 E(3), by contrast, limited the "recovery of attorney fees *** if *** the defendant, at any time up to 10 days *prior to trial*," made an offer of judgment that the plaintiff rejected but that exceeded the amount recovered at trial. 345 Or at 440 (emphasis in original). From that, the court concluded:

"A conflict between these provisions is apparent from their text. ORS 20.080(1) provides that, in tort claims of $5,500 or less, a plaintiff is entitled to receive attorney fees if the plaintiff satisfies certain procedural requirements *prior to filing the action*. ORCP 54 E, however, allows a defendant to cut off the plaintiff's right to attorney fees by making an offer of judgment *after the filing of an action but before trial*."

*Id.* (emphases added). That, *Powers* explained, meant that there was a conflict "on the basis of their statutory text alone." 345 Or at 441.

There is no similar textual conflict in this case. The language at issue in *Powers* could be seen to reflect a policy (wisely or not) that an employer must act before an action is filed or lose altogether the chance to cut its losses through

ORCP 54 E(3). ORS 652.200(2) does not impose a similar timing requirement.[7]

Although it appears to agree that *Powers* is not controlling, the majority nonetheless focuses on *Powers*'s additional conclusion that ORCP 54 E(3) "can negate, at least in part" the direction to award attorney fees under ORS 20.080. *See* 367 Or at 451-52 (citing *Powers*'s statement that, with ORCP 54 E(3), the defendant's incentive to pay without waiting for the employee to file a lawsuit "is reduced, if not eliminated"). However, it is not clear that *Powers* intended that point to be independent of its earlier explanation of the textual conflict regarding the timing and effect of settlement offers. *See Powers*, 345 Or at 440-41 ("It follows from the foregoing that we find a conflict between ORS 20.080(1) and ORCP 54 E on the basis of their statutory text alone."). *Powers* was offering additional support for its conclusion that the settlement timing provisions conflicted. It was not necessarily setting out an alternative, independent basis for concluding that ORCP 54 E(3) conflicted with ORS 20.080(1). *See* 345 Or at 440 ("[s]een in [the] light" of the textual conflict, ORCP 54 E(3) conflicted with the purposes underlying ORS 20.080(1)).

Moreover, that aspect of *Powers*'s reasoning is questionable and should not be extended. In *Powers*, this court reasoned that, "if a defendant can reduce an award of attorney fees under ORS 20.080 significantly by making an offer of judgment under ORCP 54 E, the defendant's incentive to settle a claim before the filing of an action is reduced, if not eliminated." 345 Or at 443. The majority is right to recognize the "hyperbole" in that statement, 367 Or at 451 n 10;

---

[7] The statute at issue in *Powers*, ORS 20.080(1), differs from that in this case, ORS 652.200(2), in another way. Under ORS 20.080(1), a plaintiff could recover attorney fees only if the plaintiff beat the defendant's offer. But, under the majority's interpretation of ORS 652.200(2), a plaintiff can recover attorney fees even if the plaintiff fails to beat the defendant's offer. As the Court of Appeals pointed out, that interpretation discourages efficient settlement:

"A plaintiff with a valid claim would have little incentive to accept an offer. Instead, he or she would have good reason to continue litigating—either in the hopes of obtaining a larger award or, at least, driving up the settlement value—because, so long as a single dollar was ultimately awarded, the employer would be liable for all of plaintiff's fees and costs."

*Mathis*, 298 Or App at 665-66 (footnote omitted).

for the reasons explained above, it is difficult to see how ORCP 54 E could ever "eliminate" the incentive to promptly pay a valid claim that a fee-shifting statute like ORS 20.080 or ORS 652.200(2) creates. Again, ORCP 54 E simply allows for mitigation of the *higher costs* that the defendant will face by litigating a valid claim. ORCP 54 E may therefore lessen the impact of the fee-shifting statute, but that is a far cry from irreconcilable conflict. To the extent that this court in *Powers* regarded the two as equivalent, that conclusion was not satisfactorily explained. Given the textual differences between the statute at issue there and ORS 652.200(2), I would not extend *Powers*'s reasoning to this case.

At bottom, the majority is correct to note that *Powers* is not controlling and that the fundamental issue is whether it is "possible" reasonably to construe ORS 652.200(2) to work harmoniously with ORCP 54 E(3). I believe it is, and respectfully dissent.

Duncan, J., joins in this dissenting opinion.